Earl H. STAATS, Appellant,

v.

FABRICATING EQUIPMENT AND
SYSTEMS, INC., Respondent,

A.A. Gage, Inc., etc., et al., Defendants,

and

A.A. GAGE, INC., etc., et al., Third
Party Plaintiff,

v.

The MAXSON CORPORATION, Third
Party Defendant, Respondent.

No. C6-84-660.

Court of Appeals of Minnesota.

Dec. 18, 1984.

Review Denied Mar. 13, 1985.

**346**

Michael J. Healey, St. Paul, for appellant.

Lawrence R. King, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Fabricating Equipment and Systems, Inc.

Jeff M. Zalasky, Chadwick, Johnson, & Condon, P.A., Minneapolis, for the Maxson Corp.

Heard, considered, and decided by POPO-VICH, C.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Plaintiff brought this action for personal injuries he suffered in a work related accident. A jury awarded plaintiff $40,000.00 for pain and suffering and for permanent disability but denied his claim for loss of future earning capacity. Plaintiff appeals the jury's denial of damages for loss of future earning capacity, and the trial court's exclusion of certain exhibits from the jury room, its limitation of respondent-insurer's share of plaintiff's litigation costs, and its denial of certain taxable costs. We reverse and remand for a new determination of damages for loss of future earning capacity and affirm on the remaining issues.

## FACTS

On September 3, 1976, the vice jaw securing a six ton beam broke, allowing the beam to swing into Staats, knocking him off a work platform on which he had been working. By the end of September Staats left his employer, Maxson Corporation, due to the severe pain resulting from the back injury he sustained in the accident.

Staats was totally disabled until his laminectomy in January, 1977. Staats returned to Maxson in September 1977 with physician's instructions not to lift more than 25 pounds. Staats left Maxson within the month because his duties required lifting 25 pounds or more, causing him pain.

With the aid of two rehabilitation agencies, Staats applied unsuccessfully to thirty employers over the next twelve months. In April 1979 the Minnesota Division of Vocational Rehabilitation (DVR) found Staats' highest aptitude in computer technology. Staats, however, failed the entrance exam for computer classes at Brown Institute.

A rehabilitation counselor deposed that Staats could easily do thousands of jobs in the region paying from $6.00 to $9.50 per hour. DVR nonetheless determined no suitable, available jobs existed for Staats, and certified him to a two year orthotics and prosthetics repairperson training course, from which he graduated in September, 1982. Staats contacted some prosthetics employers but failed to contact others within commuting distance. In any case, the market for prosthetics repairpersons had declined substantially during the time Staats spent learning the trade. A rehabilitation consultant contacted 20 minimum wage employers on behalf of Staats by July 1984, all without success.

An economist testified that, assuming Staats would have continued as a steelworker but for the accident, and assuming Staats had obtained employment as a prosthetics repairperson after the injury, Staats suffered future wage losses of $61,871.00. The figure increased when the economist assumed minimum wage employment or unemployment during the post-injury period.

## ISSUES

1. Did the modified version of JIG II, 164 S given by the trial court regarding loss of future earning capacity misstate a controlling principle of law?

2. Did the trial court properly exercise its discretion in excluding certain exhibits from evidence after allowing the jury to view the exhibits during trial?

3. Did the trial court improperly assume the jurisdiction of the Workers' Compensation Division by setting an upper limit for the workers' compensation insurer's share of Staats' recovery and his litigation costs?

4. Did the trial court properly exercise its discretion in denying Staats taxation of certain costs?

## ANALYSIS

1. *Jury Instruction on Loss of Future Earning Capacity*

Staats asserts the trial court's instruction caused the jury to believe Staats had a duty to return to some type of employment as a condition precedent to the recovery of any damages for loss of future earning capacity. We agree. Using a modified version of 4 Minn.Pract., Civ. JIG II, 164 S (1974), the trial court instructed the jury:

> [I]n determining the amount of those damages [for loss of future earning capacity] you should consider that one who is injured has a duty to act reasonably, and to return to some type of employment after an injury. The plaintiff is limited to those damages which he would have suffered if he had acted reasonably in returning to such employment.

■ This instruction implies Staats either had to return to some employment or make reasonable efforts to return to some employment as a prerequisite to the recovery of any damages whatsoever for loss of future earning capacity.

■ The instruction should have communicated that Staats could recover the difference between what he would have earned had he not been injured and what he would have earned had he acted reasonably in obtaining gainful employment after the injury. *See, Bemidji Sales Barn, Inc. v. Chatfield*, 312 Minn. 11, 17, 250 N.W.2d 185, 189 (1977). The law does not require the injured party to find employment before he can recover any damages for loss of future earning capacity as the trial court's instruction erroneously suggests. *See, LeMay v. Minneapolis Street Railway*, 245 Minn. 192, 200, 71 N.W.2d 826, 831 (1955); *Stenshoel v. Great Northern Railway*, 142 Minn. 14, 16, 170 N.W. 695, 696 (1919). The misleading nature of the instruction might explain the jury's denial of damages for loss of future earning capacity despite its $40,000.00 award for "Pain, suffering, and *permanent disability* past, present and future" (emphasis added). Accordingly, we remand this case to the trial court on the issue of damages for loss of future earning capacity.

2. *Jury Instruction on Exhibits*

Staats displayed several charts to the jury during the trial. The charts purported to show his lost earning capacity. When Staats offered the charts into evidence the court excluded them, later instructing the jury: "You must not consider any evidence which the court ordered to be stricken, whether it is exhibits or verbal testimony." Staats argues this instruction prejudiced him by causing the jury to believe the charts and related testimony were defective.

■ When a party fails to object to alleged instructional errors either at trial or in post-trial motions, he may not raise them on appeal. *Furley Sales and Associ-*

*ates, Inc. v. North American Automotive Warehouse, Inc.*, 325 N.W.2d 20, 28 (Minn. 1982); *See,* Minn.R.Civ.P. 51. Staats failed to object at trial and to specify that error in his post-trial motion. Whether correct or not the instruction is the law of the case and Staats cannot challenge it on appeal. *Id.*

### 3. *Jurisdiction to Limit Subrogation and Costs*

The trial court allocated $28,500.00 of Staats' recovery to "recoverable damages" under workman's compensation and declared that Staats' workman's compensation insurer had a subrogation interest in only those recoverable damages. The trial court then allowed a portion of Staats' claimed costs and held the workman's compensation insurer was not liable for costs it had disallowed. Staats agrees the trial court has jurisdiction to allocate recoverable and non-recoverable damages but challenges its jurisdiction to limit the insurer's subrogation interest and to limit the insurer's liability for costs. Staats claims those powers are within the Worker's Compensation Division's exclusive jurisdiction.

In *Henning v. Wineman,* 306 N.W.2d 550 (Minn.1981) the supreme court held district courts have jurisdiction to allocate a recovery between recoverable and non-recoverable damages even though the Worker's Compensation Division may also have allocation jurisdiction. The court's holding followed from the principle that district courts have jurisdiction over judicial matters unless that power is vested in another court. *Id.* at 553, *quoting, Agin v. Heyward,* 6 Minn. 110, 118 (Gil. 53, 62–63) (1861). That principle applies here with equal force. We leave the precise determi-nation of the insurer's subrogation interests and liability for costs under Minn.Stat. § 176.061(6) (1982) to the Worker's Compensation Division.

### 4. *Taxation of Costs*

At trial Staats sought taxation of costs and disbursements of $7,996.52 under Minn.Stat. § 549.04 (Supp.1983):

> In every action in a district court, the prevailing party * * * shall be allowed reasonable disbursements paid or incurred, including fees and mileage paid for service of process by the sheriff or by a private person.

The trial court limited Staats to $3,132.83 in taxable costs, and Staats alleges error. Determination of the reasonableness of disbursements rests largely within the discretion of the trial court. *Salo v. Duluth and Iron Range Railroad,* 124 Minn. 361, 364, 145 N.W. 114, 115 (1914). While the $3,132.83 award for costs and disbursements appears low compared with Staats' request, we are reluctant to find the award constitutes an abuse of discretion.

### DECISION

We reverse and remand for a new trial solely on the issue of damages for loss of future earning capacity. On the remaining issues we affirm.

Affirmed in part and reversed in part.