Scott KEMPA, Plaintiff,

v.

E.W. COONS COMPANY, Uniroyal Tire Co., Defendants and Third-Party Plaintiffs,

and

CLARK EQUIPMENT COMPANY, defendant and third-party plaintiff, Respondent,

v.

UNITED STATES STEEL CORPORATION, third-party defendant, Appellant.

No. CX–83–876.

Supreme Court of Minnesota.

June 14, 1985.

Tyrone P. Bujold, Frederick A. Dudderar Jr., Duluth, for appellant.

John J. Killen, Duluth, for respondent.

COYNE, Justice.

The plaintiff, Scott Kempa, was severely injured in a work-related accident involving a fork-lift truck manufactured by Clark Equipment Company (Clark). Kempa brought an action for compensatory and punitive damages against Clark and others; in turn, the defendants impleaded United States Steel Corporation (U.S. Steel), Kempa's employer, for contribution.

By special verdicts the jury attributed 80% of the fault with respect to plaintiff's injury to Clark and the remaining 20% to U.S. Steel and awarded Kempa compensatory damages of $5,773,587.58 and punitive damages of $7.9 million.

While post trial motions were pending, Kempa and Clark entered into what is commonly called a "Naig" settlement. According to the settlement agreement, Clark paid Kempa $5 million in compensatory damages as a full, final and complete compromise and settlement of any and all of Kempa's claims, compensatory and punitive, for which Kempa had not been and would not be paid by U.S. Steel under the Workers' Compensation Act. In the settlement agreement Kempa and Clark expressly reserved the subrogation rights afforded U.S. Steel by Minn.Stat. § 176.061, subds. 5 and 7 (1984), and explicitly acknowledged that the sum paid Kempa pursuant to the agreement was exclusive of, and not duplicative

of, any workers' compensation benefits paid or to be paid by U.S. Steel (including medical expenses, compensation benefits of every kind and nature, and supplementary benefits) and that no sum paid pursuant to the terms of the settlement agreement should be construed to be anything other than payment to Kempa of compensatory damages over and above and exclusive of U.S. Steel's subrogation rights. Finally, the agreement recognized that payment of the agreed upon sum was not to be taken as either waiver or satisfaction of Clark's claim against U.S. Steel for contribution.

Following execution of the settlement agreement, the trial court ordered Kempa's claims against Clark dismissed with prejudice. The order of dismissal, however, reserved Clark's claim for contribution and the employer's subrogation interest, and U.S. Steel continued to pursue its subrogation claim against Clark in Kempa's name. In disposing of the remaining issues of contribution and subrogation, the trial court adopted the special verdicts and incorporated them in his findings. Since the jury had been asked to determine only the total amount of Kempa's damages, the trial court, at U.S. Steel's request, allocated the damages. The trial court found as fact that $1,596,971.91 of the $5,773,587.58 awarded as compensatory damages represented damages of the kind compensable pursuant to the Workers' Compensation Act and concluded that U.S. Steel had a subrogation interest not to exceed $1,596,-971.91 with respect to compensation benefits paid and to be paid.[1]

The trial court also concluded that Clark was entitled to contribution from U.S. Steel in the amount of $1 million (20% of $5 million paid pursuant to the settlement

agreement) or the amount of U.S. Steel's liability for workers' compensation benefits, whichever was the lesser amount. In the memorandum attached to his order, however, the trial court observed that no money should change hands, that the contribution and subrogation should simply offset each other, until U.S. Steel had paid compensation benefits of $1 million. Clark was directed to indemnify U.S. Steel for compensation benefits in excess of $1 million, but Clark's subrogation liability was not to exceed $596,971.91.

U.S. Steel appealed from and Clark noticed review of the order and judgment. We reverse.

## I.

### CONTRIBUTION

Clark asserts that the trial court correctly recognized its right of contribution and correctly calculated the amount by applying the jury's apportionment of fault to the amount paid in settlement. U.S. Steel, on the other hand, contends that because the jury found that Clark had been willfully indifferent to the rights and safety of others and assessed punitive damages, Clark is not entitled to contribution.

■ At the outset it must be recognized that the settlement toward which Clark seeks contribution specifically settled only those damages for which Kempa had not been and would not be paid pursuant to the Workers' Compensation Act and expressly reserved any subrogation rights of U.S. Steel. In short, the settlement did not settle any liability common to Clark and U.S. Steel. By its terms the settlement was limited to those damages for which Clark

---

1. The amount allocated as damages subject to U.S. Steel's subrogation interest is the sum of the following items:

| $ 394,864.66 | Total workers' compensation benefits (including payments for permanent partial disability, permanent total disability, and medical expenses) to October 16, 1982. |
|---|---|
| $ 470,000.00 | Medical expenses of $10,000 per year for remaining life expectancy of 47 years. |
| $ 270,191.25 | Home nursing care of $15.75 per day for remaining life expectancy. |
| $ 461,916.00 | Compensation benefits of $189.00 per week for remaining life expectancy. |
| $1,596,971.91 | |

The trial court stated that he had not made any adjustment for inflation nor discounted the items to present value.

alone was liable. The amount paid in settlement did not include any payment with respect to medical expenses or other workers' compensation benefits which U.S. Steel has already paid or for which it could receive credit against its present and future workers' compensation liability. Hence, there is no basis for requiring U.S. Steel to contribute to this settlement, which expressly excludes from consideration any sum for which Kempa's employer, U.S. Steel, could be liable.

## · II.

## SUBROGATION

Although the settlement between Kempa and Clark specifically excluded all workers' compensation benefits paid or to be paid by U.S. Steel, the cause of action alleged in Kempa's complaint was not so limited. The action tried and submitted to the jury encompassed *all* damages sustained by Kempa, including those damages in which U.S. Steel held a subrogation interest pursuant to Minn.Stat. § 176.061, subds. 5 and 7 (1984). When U.S. Steel renewed the pursuit of its subrogation claim following execution of the settlement, the unresolved portion of · Kempa's action—the subrogation claim—was simply continued in Kempa's name as provided in section 176.061,

subd. 5. The jury had, of course, already determined Kempa's total damages. Since the jury had not itemized the elements of damages included in its award, the trial court attempted to allocate those damages in which U.S. Steel has a subrogation interest. Based on the trial court's estimate of the amounts the jury awarded for future medical and nursing expense and loss of earning capacity, together with the medical expenses and other workers' compensation benefits already paid, the trial court fixed U.S. Steel's subrogation interest at $1,596,-971.91.

Inasmuch as Clark's liability for the employer's subrogated claim is limited by the damages sustained by the employee, *Paine v. Water Works Supply Co.*, 269 N.W.2d 725, 729 (Minn.1978), the trial court correctly ruled that the extent of U.S. Steel's subrogation interest depends on the jury's verdict. The employer's subrogation claim is, however, a creature of statute. Minn.Stat. § 176.061, subd. 5 (1984). And the section which creates the right of subrogation and provides for its assertion as part of the employee's action against a third-party tortfeasor also prescribes the method for calculating its amount. Minn. Stat. § 176.061, subd. 5(a) and 6 (1984).[2] Although subdivision 6 of section 176.061 addresses the division of the proceeds of

2. The concluding sentence of Minn.Stat. § 176.-061, subd. 5(a) provides, "The proceeds of the action or settlement of the action shall be paid in accordance with subdivision 6."

 Minn.Stat. § 176.061, subd. 6 provides as follows:

 Subd. 6. **Costs, attorney fees, expenses.** The proceeds of all actions for damages or of a ʹsettlement of an action under this section, except for damages received under subdivision 5, clause (b) received by the injured employee or the employee's dependents oṙ by the employer or the special compensation fund, as provided by subdivision 5,̇ shall be divided as follows:

 (a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then

 (b) One-third of the remainder shall in any event be paid to the injured employee or the employee's dependents, without being subject to any right of subrogation.

 (c) Out of the balance remaining, the employer or the special compensation fund shall be reimbursed in an amount equal to all benefits paid under this chapter or on behalf of the employee or the employee's dependents by the employer or special compensation fund, less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or his dependents from the other party multiplied by all benefits paid by the employer or the special compensation fund to the employee or the employee's dependents.

 (d) Any balance remaining shall be paid to the employee or the employee's dependents, and shall be a credit to the employer or the special compensation fund for any benefits which the employer or the special compensation fund is obligated to pay, but has not paid, and for any benefits that the employer or the special compensation fund is obligated to make in the future.

 There shall be no reimbursement or credit to the employer or to the special compensation fund for interest or penalties.

the employee's action or of the settlement of his action and, hence, is directed to disposition of the rights of employer and employee *inter se*, the allocation formula provided there is appropriate for application in the present case. The employee's action, including the employer's subrogation interest, was tried to a conclusion and the amount of the employee's damages determined. The subsequent settlement between the employee and the third-party tortfeasor expressly excluded the employer's subrogation interest. Since the subrogation interest was unaffected by the settlement, the amount of the subrogation interest should be calculated in the same manner that it would have been calculated had the verdict been reduced to judgment and satisfied.

■ Although we have referred to the settlement between Kempa and Clark as a "Naig" settlement, it is in some respects not a typical settlement of the type considered in *Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 894 (Minn.1977), because it occurred after—not before—a verdict had been returned. Customarily, following a "Naig" settlement, the claim asserted by the employer is limited to the employer's subrogation interest: the medical expenses and other workers' compensation benefits already paid by the employer and those for which the employer will be liable in the future. In the employer's subrogation action, the damages allowed are diminished, pursuant to Minn.Stat. § 604.01, subd. 1 (1984), by the aggregate fault of the employee and the employer. Moreover, by entering into the *Naig* settlement, the employee waives his statutory right to one-third of the employer's net recovery from the third party. *See Naig*, 258 N.W.2d at 894.

■ Here, however, U.S. Steel, the employer, participated in the trial, which was tried to a verdict, but did not participate in the subsequent settlement. Consequently, while U.S. Steel is not required to contribute to the $5 million settlement for non-workers' compensation damages, U.S. Steel's *Lambertson* contribution obligation must be determined on the basis of the verdict rendered for Kempa's total compensatory damages. *See Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977). Moreover, in calculating the amount of the employer's subrogation claim, we must deduct from the amount of the verdict the employee's statutory one-third share despite the waiver intrinsic to Kempa's settlement.

■ Ordinarily, when a verdict is reduced to judgment and satisfied, the workers' compensation division of the department of labor and industry makes the allocation of the proceeds pursuant to section 176.061, subd. 6—an allocation which provides for reimbursement for workers' compensation benefits paid and for credit against future benefits. Since, however, U.S. Steel's obligation to pay workers' compensation benefits is unaffected by the calculation of the amount of its subrogated claim against Clark and since the purpose of the calculation is the disposition of civil litigation pending in the district court, the trial court should make the calculation in this case.

Because the record before us contains no evidence of the cost of collection, we can only illustrate the method of calculation by the following hypothetical, which is based on the verdict:

The verdict is $5,773,587. Fees and costs are estimated at $2,020,755 (35% of $5,773,587). The employer has previously paid $394,865 in workers' compensation benefits.

According to Minn.Stat. § 176.061, subd. 6 (1984), the damage award would be allocated in this manner:

| | | |
|---|---|---|
| (a) | Damages awarded | $5,773,587 |
| | Less: Reasonable cost of collection | 2,020,755 |
| | | 3,752,832 |
| (b) Less: | Employee's one-third share | 1,250,944 |
| | | 2,501,888 |
| (c) Less: | Employer's reimbursement [3] | 256,662 |
| (d) | Balance | $2,245,226 |

■ Although the statute provides only that the balance shall be a credit to the employer against unpaid benefits and benefits payable in the future, in *Cronen v. Wegdahl Cooperative Elevator Ass'n.*, 278 N.W.2d 102 (Minn.1979), we held that only the net balance—the balance reduced by the employer's proportionate share of costs—was available as a credit to the employer. Thus, the calculation would continue as follows:

| | | |
|---|---|---|
| (d) Balance | | $2,245,226 |
| Less: Employer's proportionate share of costs[4] | | 785,829 |
| Credit against unpaid and future benefits | | $1,459,397 |
| Plus: Employer's reimbursement (c) | | 256,662 |
| Employer's subrogation interest | | $1,716,059 |

U.S. Steel's total subrogation interest, then, is the sum of the employer's net reimbursement for benefits paid and the net credit against unpaid and future workers' compensation benefits ($1,716,059 in the hypothetical).

■ In addition, however, to setting the damage figure from which the subrogation interest was calculated, the jury also found that U.S. Steel was 20% at fault. As we recently observed in *Wilken v. International Harvester Company*, 363 N.W.2d 763 (Minn.1985), under the rationale of *Lambertson, supra*, "the negligent employer's contribution obligation is used to offset that employer's right of subrogation for benefits paid and its right of credit for future benefits payable." *Wilken*, 363 N.W.2d at 767. In the present case U.S. Steel's contribution obligation in respect of the verdict is $1,154,718 (20% of $5,773,587). That amount is an offset against the

**3.** Statutory formula for allocating costs of collection:

Employer's proportionate share of costs

$\dfrac{\$2,020,755}{\$5,773,587}$ (or .35) × $394,865 = $138,203

subrogation interest, and the third party's obligation is limited to the present value of the remainder: using the hypothetical subrogation interest, Clark's obligation would be $561,341 ($1,716,059 less $1,154,718), reduced to present value. The remainder, reduced to present value, is payable in a single lump sum. *See Wilken*, 363 N.W.2d at 767.

■ Equating willful indifference with intentional wrongdoing and citing *Hardware Mutual Casualty Co. v. Danberry*, 234 Minn. 391, 48 N.W.2d 567 (1951), and *Skaja v. Andrews Hotel Co.*, 281 Minn. 417, 161 N.W.2d 657 (1968), U.S. Steel contends that because the jury found that Clark had been willfully indifferent to the rights and safety of others and assessed punitive damages, Clark is not entitled to an offset based on the jury's assessment of comparative fault. It must be recognized, however, that statutory comparative fault, Minn.Stat. § 604.01 (1984), first enacted in 1967 as comparative negligence, and apportionment of damages, Minn.Stat. § 604.02 (1984), have had a significant impact on the principles of loss allocation embodied in the doctrines of contribution and indemnity. For example, one who incurs liability because of his negligent failure to discover or prevent the misconduct of another is no longer entitled to indemnity, but only to contribution apportioned according to relative fault. *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362 (Minn.1977).

■ We agree with U.S. Steel that the statutory apportionment of damages, section 604.02, does not govern an employer's contribution or an offset to an employer's subrogation claim. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149 (Minn.1982); *Johnson v. Raske Building Systems, Inc.*, 276 N.W.2d 79 (Minn.1979). Clark and U.S. Steel are neither jointly liable nor jointly and severally liable to U.S. Steel's employee. An employer's obligation with respect to the employee's damages is limited by his obligation for workers' compensation bene-

| | |
|---|---|
| Benefits paid | $394,865 |
| Less: proportionate share of costs | −138,203 |
| Net reimbursement to employer | $256,662 |

**4.** $\dfrac{\$2,020,755}{5,773,587}$ (or .35) × $2,245,226 = $785,829

fits even though the employer's fault-based share of the damages would have been greater. *Horton by Horton v. Orbeth, Inc.*, 342 N.W.2d 112, 115 (Minn.1984). On the other hand, an employer's subrogation against a more culpable third-party is denied to the extent of the employer's proportionate share of the fault even though the employer was less at fault than the injured employee. *Hudson*, 326 N.W.2d at 157–58.

 Nevertheless, comparative fault has constituted the basis for the modified apportionment of damages developed in *Lambertson* and its progeny. Here the jury attributed 20% of the direct causal fault to U.S. Steel. Although U.S. Steel characterizes its conduct as "merely negligent", the jury found only that U.S. Steel was at fault. "Fault" includes "acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others * * * *" Minn. Stat. § 604.01, subd. 1(a) (1984). We have said that reckless conduct includes willful and wanton disregard for the safety of others, and we have also pointed out that reckless misconduct differs from intentional wrongdoing in one very important particular—the reckless act is intended by the actor, but the harm is not. *State v. Bolsinger*, 221 Minn. 154, 157–58, 21 N.W.2d 480, 484–85 (1946). *See* Restatement, Second, Torts § 500, comment f. (1965). Since punitive damages may not be assessed against an employer absent a conscious and deliberate intent to inflict injury on the employee, *Hildebrandt v. Whirlpool Corp.*, 364 N.W.2d 394 (Minn.1985), the jury was not asked to determine whether or not U.S. Steel's conduct showed willful indifference to the rights or safety of others. That the jury found that Clark was willfully indifferent to others' safety and assessed punitive damages for which U.S. Steel has no liability does not justify permitting U.S. Steel to escape all liability for the compensatory damages attributable to an injury for which it was partly at fault. As we said in *Tolbert*, 255 N.W.2d at 367, tortfeasors must now accept responsibility for damages commensurate with their own relative culpability; while the more culpable wrongdoer bears a greater portion of the loss, the less culpable tortfeasor no longer escapes all liability.

We are not unmindful of a certain arbitrariness in the method employed to determine the amount of U.S. Steel's subrogation claim. That amount may far exceed the amount of workers' compensation benefits U.S. Steel ultimately pays so that some or all of the payment exacted from Clark is a windfall. Similarly, because the employee may die or recover, an employer's payment to a third-party tortfeasor who has satisfied the employee's tort judgment may far exceed the compensation credit the employer actually utilizes. Without doubt both the maximum amount of contribution for which the employer could be liable and the extent of the employer's subrogation interest could be determined with precision were contribution and subrogation to be recoverable only as workers' compensation benefits are paid or come due from time to time. We have, however, already decided that precision must yield to the advantages of a final one-time resolution of the contribution claim—a decision equally applicable to the subrogation claim. *See Wilken, supra*. Although the remedy is not perfect, it is consonant with the formula adopted in *Johnson v. Raske Building System, Inc., supra*, and with the statutory allocation formula.

Reversed and remanded for further proceedings in conformity with this opinion.