Kathleen D. JENDRO, et al., Plaintiffs,

v.

HONEYWELL, INC.,
Defendant, Respondent,

v.

NORTHWEST LP GAS COMPANY,
Defendant, Appellant.

No. C2–85–2349.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Review Denied Nov. 19, 1986.

George W. Flynn, Robert L. Collins, Faegre & Benson, Minneapolis, for respondent.

Greer E. Lockhart, Gregory P. Bulinski, Bassford, Heckt, Lockhart & Mullin, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

This is a personal injury action. Kathleen Jendro sued several defendants, including respondent Honeywell and appellant Northwest LP Gas Co. (Northwest), for damages she suffered when her furnace exploded. Honeywell entered into a settlement with Jendro to which all the other defendants contributed except Northwest. Honeywell pursued its cross-claim for contribution against Northwest, and the jury found that Northwest was partially liable for Jendro's injuries and that Honeywell was entitled to contribution from Northwest. We affirm.

## FACTS

Kathleen Jendro was seriously burned in April 1979 when gas leaked from her furnace and ignited. She commenced an action against Honeywell, Northwest, and several other defendants involved in the manufacture of the furnace and its component parts. Jendro claimed the explosion was caused in part by the failure of a gas control valve manufactured by Honeywell. Honeywell entered into a complete settlement with Jendro for $3,315,000 and sought contribution from the other defendants.

Honeywell admitted at trial that the valve was defective and that it was negligent but claimed that Northwest was also at fault. Arguing that a defendant who intentionally causes damage is not entitled to contribution from a co-defendant, Northwest requested and received a special interrogatory asking, "Did Honeywell intend to harm Kathy Jendro?" Northwest also presented evidence that Honeywell knew that its gas control valves contained defects which could create a substantial product hazard under the Consumer Product Safety Act (CPSA), 15 U.S.C. § 2064 (b) (1982), and that Honeywell failed to report that information in a timely manner to the

Consumer Product Safety Commission (CPSC).

The jury found that Honeywell had intended to harm Kathy Jendro and that Honeywell had knowingly failed to report in a timely manner relevant information to the CPSC concerning the gas control valve. The jury apportioned 96 percent of the fault to Honeywell and 4 percent to Northwest; no other party involved in the occurrence was found negligent.

Honeywell moved to set aside the jury's special verdict determining that Honeywell intended to harm Kathy Jendro, as not supported by the evidence. The trial court granted this motion and also ruled that Honeywell's knowing violation of the CPSC's product hazard reporting rules did not bar Honeywell from obtaining contribution from Northwest. The trial court found that the $3,315,000 settlement was fair and reasonable and ordered judgment against Northwest for $132,600, representing 4 percent of the settlement. Northwest appeals from the judgment.

### ISSUES

1. Did the trial court err in setting aside the jury's determination that Honeywell intended to harm Jendro?

2. Does Honeywell's knowing violation of the CPSC's product hazard reporting rules preclude Honeywell's claim for contribution?

### DISCUSSION

#### I

■ Under Minn.Stat. § 604.02, subd. 1 (1984), Northwest is obligated to contribute to Honeywell an amount in proportion to the percentage of fault attributable to Northwest. However, a tortfeasor may lose its entitlement to contribution if it acts with a conscious intent to cause harm or if its conduct constitutes "intentional wrongdoing." *Kempa v. E.W. Coons Co.,* 370 N.W.2d 414, 420–21 (Minn.1985). In order to establish intentional wrongdoing, it must be shown that both the act *and* the harm resulting from the act were intended by the actor. *Kempa,* 370 N.W.2d at 421 (citing

*State v. Bolsinger,* 221 Minn. 154, 21 N.W.2d 480 (1946)).

■ We agree with the trial court that the evidence was insufficient to demonstrate that Honeywell intended the harm that befell Kathy Jendro. The evidence established that Honeywell was well aware of serious defects and problems with the valves, that Honeywell initially decided against a recall, and that the problems were not timely reported to the CPSC. Such evidence, however, is insufficient to demonstrate that Honeywell knowingly supplied Jendro with a defective valve with the intent that the valve would fail and cause an explosion that would injure her. Indeed, this evidence is insufficient to demonstrate that Honeywell *intended* any of the defective valves to fail and cause injury to anyone. While, under the evidence, Honeywell's actions may have been grossly negligent or even reckless, Honeywell's conduct does not constitute "intentional wrongdoing" such that it must forfeit its right to contribution from a party determined to be partly at fault. *See Kempa,* 370 N.W.2d at 421.

#### II

Northwest, citing *Skaja v. Andrews Hotel Company,* 281 Minn. 417, 161 N.W.2d 657 (1968), argues that "the knowing or intentional violation of a statute" (here, the CPSA) by Honeywell precludes any right of contribution from Northwest.

It is presently unclear just what a product manufacturer has violated when it does not comply with the product hazard reporting rules issued by the CPSC. In *Swenson v. Emerson Electric Co.,* 374 N.W.2d 690, 698–99 (Minn.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986), the Minnesota Supreme Court indicated that a violation of the product hazard reporting rules constituted a violation of a "rule issued by the Commission" under 15 U.S.C. § 2072(a). In contrast, the U.S. Court of Appeals for the Eighth Circuit, in *Drake v. Honeywell, Inc.,* 797 F.2d 603 (8th Cir.1986), held that a violation of the product hazard reporting rules, as merely

interpretive rules, may constitute an actual violation of federal *statute*, specifically 15 U.S.C. § 2064(b).

■ If failure to comply with the reporting rules constitutes the violation of a rule issued by the CPSC,[1] then we have been cited to no authority and found none which holds that the violation of an administrative rule by a party precludes the recovery of contribution by a joint tortfeasor. In the absence of precedent, we decline to recognize a new circumstance barring contribution when the Minnesota legislature has established a general rule that contribution to awards shall be in proportion to the fault attributable to each tortfeasor *see* Minn.Stat. § 604.02, subd. 1, and where a jury has found a party partly at fault.

■ Even if failure to comply with the product hazard reporting rules constitutes violation of a statute,[2] we do not believe Honeywell is precluded from obtaining contribution. A tortfeasor who violates a statute is entitled to contribution, unless the tort was "committed with actual, conscious intent to cause harm to others." *Lange v. Schweitzer*, 295 N.W.2d 387, 390 (Minn. 1980).

■ As has been discussed above, there is no evidence to demonstrate that Honeywell consciously intended its valve to fail, causing gas explosions and injury to Jendro or any other consumer. Honeywell's conduct "is more akin to negligence than to the commission of an intentional tort." *Lange*, 295 N.W.2d at 389–90. Therefore, the actions of Honeywell and Northwest have essentially "been of the same kind," *id.* at 390, and Honeywell is still entitled to

contribution. While Honeywell's negligence is significantly more serious than the conduct of Northwest, "tortfeasors must now accept responsibility for damages commensurate with their own relative culpability; while the more culpable wrongdoer bears a greater portion of the loss, the less culpable tortfeasor no longer escapes all liability." *Kempa*, 370 N.W.2d at 421.

### DECISION
The judgment is affirmed in all respects. Affirmed.

does not necessarily follow that violations of a federal statute also bar contribution rights. State courts are, of course, obligated to respect and enforce federal statutes, but a state is not bound to alter its tort law as a result of the existence of a federal statute unless Congress clearly intends to pre-empt the state law. *See Blackburn v. Doubleday Broadcasting Co.*, 353 N.W.2d 550, 554 (Minn.1984). We find nothing in the CPSA which would indicate Congress intended that a failure to report information to the CPSC would bar a manufacturer's claim for contribution against a co-tortfeasor who is also partly to blame for a consumer's injuries.

1. We are obligated to follow the statutory interpretation of the Minnesota Supreme Court. *See Cooper v. Morin*, 398 N.Y.S.2d 36, 91 Misc.2d 302 (1977) (construction given by lower federal courts to federal law is entitled to due respect in state courts, but only decisions of United States Supreme Court bind state courts).

2. It must be noted that the statute which assertedly bars contribution here is a federal, as opposed to a Minnesota, statute. We have found no decisions of the Minnesota Supreme Court discussing whether violation of a *federal* statute should bar claims for contribution made under state law. Even if violations of a Minnesota statute by a party precluded contribution, it