Todd M. ALBERT, et al., Respondents,

and

MAK Oil Company, Intervenor, Respondent,

v.

PAPER CALMENSON & COMPANY, Defendant and third-party Plaintiff, Appellant (CX–93–1334), Respondent (C8–93–1560),

v.

CERES CONSTRUCTION COMPANY, a/k/a Ceres Tree Company, third-party Defendant, Respondent,

MAK Oil and Environmental Company, third-party Defendant, Respondent, Appellant.

Nos. CX–93–1334, C8–93–1560.

Court of Appeals of Minnesota.

April 12, 1994.

Review Granted in Part; Denied in Part June 29, 1994.

Duane E. Arndt, Arndt & Benton, P.A., Minneapolis, for Paper Calmenson & Co.

Tyrone P. Bujold, Susan R. Nelson, Paul J. Harmon, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Todd M. Albert, et al.

Ted E. Sullivan, William L. Davidson, Lind, Jensen & Sullivan, Minneapolis, for MAK Oil Co.

William M. Hart, Jennifer B. Mohlenhoff, Joseph W.E. Schmitt, Meagher & Geer, Minneapolis, for Ceres Const. Co.

Steven F. Mattaini, Erstad & Reimer, P.A., Minneapolis, for MAK Oil & Envir. Co.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

PARKER, Judge.

Appellant Paper Calmenson & Co. ("PaCal") owns a building located at County Road B and Highway 280 in St. Paul. The building, originally a steel plant, contained more than 40 petroleum/chemical storage tanks. PaCal hired Braun Environmental Laboratories to study and make recommendations on tank cleaning and removal.

Ceres Construction Co., owned individually by David McIntyre, leased space in the PaCal building beginning in March 1989. In 1989 or 1990, Ceres submitted proposals to PaCal for removing tanks and doing other tank work. Ceres obtained tank removal permits for six tanks from the City of Roseville and completed removal by May 1990. In 1990, at PaCal's request, McIntyre contacted MAK Oil and Environmental Co. ("MAK Oil") regarding cleaning of two underground storage tanks. PaCal accepted MAK Oil's bid, and cleaning was set to begin in October 1990.

The night of October 25–26, PaCal heated the No. 6 fuel oil in one of the underground tanks to make it easier to pump out. On October 26, 1990, Todd Albert, Allan Geers, and their supervisor, David Bechtold, all MAK Oil employees, arrived at the PaCal building to begin the tank cleaning. Bechtold asked PaCal to turn off the heating of the underground tank. Geers testified that he had seen No. 6 fuel before and that it was a heavy fuel. "I knew that even direct flame on it would not start a fire. It's almost like a tar-like substance when it's cold, and it's not very flammable at all." Although Albert and Geers knew the fuel was heated, they testified no one told them that heating the oil to approximately 240 degrees created dangerous, flammable vapors in the tank.

Because the MAK Oil employees had trouble removing bolts from the manhole cover on the tank, Bechtold left to get tools. Bechtold testified that he specifically instructed Albert not to use a blowtorch to remove the bolts. At trial, Albert and Geers testified that Bechtold told them to continue trying to remove the bolts. Albert denied having received an instruction against using a torch.

After Bechtold's departure, McIntyre, owner of Ceres, came to the site and, learning of the trouble with the bolts, left and telephoned a PaCal plant maintenance supervisor. Geers testified that the maintenance supervisor, Harold Thielen, asked them if they wished to use a torch. Thielen then sent Leonard Gunderson, a PaCal employee, with a blowtorch for the MAK Oil employees. Gunderson gave Albert some instructions on using the torch and left. Gunderson testified that he knew the fuel vapors in the tank had the potential to ignite but that he did not warn Albert and Geers of this danger.

Albert used the torch to cut bolts on the manhole cover of the tank. There was combustion of the fuel vapors, and hot gases engulfed and burned him.

Albert suffered second- and third-degree burns over 86 percent of his body. Dr. John Twomey, Albert's treating physician and general surgeon and director of the Burn Center at the Hennepin County Medical Center, testified that a person with such burns has a chance of survival of "definitely less than ten percent, probably less than five percent." Nonetheless, Albert survived.

Albert sued PaCal for negligence, and PaCal impleaded MAK Oil and Ceres as third-party defendants. On the first day of trial the district court granted Ceres' renewed motion for summary judgment and dismissed Ceres as a party in the case.

After an eight-day trial, the jury found PaCal 50 percent negligent, MAK Oil 25

percent negligent, and Albert 25 percent negligent. The jury found the following damages:

| | |
|---|---|
| $ 498,144.55 | past medical expenses (stipulated) |
| $ 18,000.00 | future medical expenses (uncontested) |
| $ 50,000.00 | past lost earnings (uncontested) |
| $ 50,000.00 | lost future earning capacity |
| $1,000,000.00 | past pain and suffering |
| $1,000,000.00 | future pain and suffering |
| $2,616,144.55 | TOTAL |

Because of Albert's negligence, the trial judge reduced this total by 25 percent, to $1,962,108.40. The court ordered judgment in this amount against PaCal and also ordered a judgment for contribution against MAK Oil in the amount of $654,036.07 (25 percent of $2,616,144.55).

The trial judge denied PaCal's motion for judgment notwithstanding the verdict (JNOV) or a new trial. He also denied third-party defendant MAK Oil's motion to amend the judgment in accordance with their subrogation interest. We consolidated the separate appeals of PaCal and MAK Oil.

## ISSUES

I. Did the district court err in granting Ceres' renewed summary judgment motion?

II. Did the district court err in granting summary judgment without providing timely notice to PaCal?

III. Was the failure to record the charging conference reversible error?

IV. Did the jury's deliberation time of less than two hours and an award of exactly half of the requested damages indicate a "compromise verdict?"

V. Does the evidence support the jury's damage award?

VI. Did the trial court err in not granting PaCal's requested specific instructions?

VII. Did the district court err in excluding evidence?

VIII. Did the district court err in denying judgment notwithstanding the verdict?

IX. Did the district judge's posttrial recusal for a newly developed potential conflict of interest indicate bias during the trial?

X. Does the district court have the authority to allocate the proceeds of a judgment if the parties have stipulated to the amount of an employer's workers' compensation interest?

XI. Does an employer's contribution liability in an employee's personal injury suit against a third party offset the workers' compensation subrogation interest?

XII. Is PaCal a prevailing party entitled to costs and disbursements from MAK Oil?

## DISCUSSION

### I. Summary Judgment for Ceres

PaCal argues that the district court erred in granting summary judgment to Ceres. PaCal specifically argues that there was a genuine issue of material fact as to the existence of an ongoing contract between Ceres and PaCal and, therefore, whether Ceres had a duty to supervise Albert.

In reviewing a grant of summary judgment, this court determines whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *United Artists Communications, Inc. v. Corporate Property Investors,* 410 N.W.2d 39, 41 (Minn.App.1987). To resist summary judgment, the evidence must be significantly probative, not merely colorable. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also Carlisle v. City of Minneapolis,* 437 N.W.2d 712, 715 (Minn.App. 1989).

We perceive no genuine issue of material fact as to Ceres' alleged duty to supervise Albert. There is no evidence of an implied contract between Ceres and PaCal. Ceres submitted bids for removal of specific, individual tanks and was awarded the work for some tanks but not for others. There is no evidence that Ceres was awarded a contract for cleaning the tank on which Albert worked. PaCal asserts that the proposed schedules for tank work that Ceres submitted to PaCal are evidence of an ongoing

contract for Ceres to oversee cleaning and removal of the tanks at the PaCal building. However, the most that we can infer from these schedules is that Ceres *proposed* removing a number of tanks and hoped to be awarded the bids. There is some evidence of an "overall" function performed by Braun Environmental Laboratories, which studied the tanks and made recommendations for removal, cleaning, or sealing.

More specifically, however, there is no evidence, even assuming such a contract existed, that Ceres had a duty to supervise Albert. MAK Oil, as the subcontractor working on the tank, had a duty to supervise its employee. PaCal has not shown, however, why Ceres would have any duty to supervise a MAK Oil employee. The fact that Ceres worked on removal of some tanks on the PaCal property hardly imposes on Ceres a duty to supervise work done on other tanks being prepared to be sealed in place. Accordingly, we affirm the district court's grant of summary judgment dismissing Ceres as a third-party defendant.

■ PaCal also argues the district court erred in considering the summary judgment motion because of Ceres' failure to give adequate notice.

On the first day of the trial, Ceres renewed a motion for summary judgment first made and denied several months earlier. Although PaCal objected to the lack of notice, the trial court refused to allow time for further submissions but heard arguments. There is no question but that the summary judgment motion was made without proper notice. A party moving for summary judgment must provide notice at least ten days before the time fixed for the hearing. Minn. R.Civ.P. 56.03. No notice is required, however, when a court grants summary judgment *sua sponte,* if both parties are given an opportunity to respond and if lack of notice does not prejudice the party against whom summary judgment is granted. *Wikert v. Northern Sand & Gravel, Inc.,* 402 N.W.2d 178, 182 (Minn.App.1987), *pet. for rev. denied* (Minn. May 18, 1987).

We are troubled by the trial court's granting of the "renewed" motion for summary judgment on the threshold of trial. To be sure, the parties were presumably prepared on all issues in the case and the court had not specifically found earlier that Ceres did owe a duty of supervision. On the one hand, it is difficult for counsel to do their best job of representation when faced with impromptu renewed motions; on the other hand, an appellate court is loath to interfere with a trial court ruling which appears, in effect, to correct an earlier error. We conclude that the trial court must be given some reasonable latitude and that the question becomes, "was PaCal prejudiced?" *Id.*

PaCal contends that it was prejudiced by the lack of notice because the trial court refused to consider additional evidence available to oppose the summary judgment motion. We conclude, however, that this proffered evidence, testimony of an engineer, was not "additional" evidence, because PaCal had submitted this deposition testimony for the previous hearing on the motion. Thus, because PaCal did not show it had additional evidence to offer, and the parties did present further arguments, there was no prejudice from the lack of notice when the trial judge changed his mind. Accordingly, we affirm the grant of summary judgment for Ceres.

## II. *New Trial*

■ PaCal argues that it is entitled to a new trial because of errors committed by the trial court. A trial court's decision to grant or deny a new trial is not disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.,* 304 N.W.2d 346, 352 (Minn.1981). While few cases of this complexity are tried totally without error, and this case is no exception, we conclude that there are no errors here of such import as to require a new trial.

## III. *Failure to Record*

■ PaCal argues the district court erred in failing to record its rulings on jury instructions. When trial counsel file their request for jury instructions, the trial court must inform counsel of its proposed action before instructing the jury and must place this discussion on the record. Minn.R.Civ.P. 51.

The trial court omitted to record this discussion as required by the rules, but because

PaCal failed to object at the conference or before the close of trial, the failure is not reversible error. PaCal did not raise this issue in its motions for JNOV or for a new trial. The issue, therefore, cannot be raised for the first time on appeal. *Bakke v. Rainbow Club, Inc.*, 306 Minn. 99, 102–03, 235 N.W.2d 375, 378 (1975); *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 376 (Minn.App. 1985). Finally, we note the record indicates that the judge did orally reveal his rulings on jury instructions to the parties before submitting them to the jury.

## IV. *Compromise Verdict*

PaCal argues it is entitled to a new trial because the jury returned a "compromise" verdict. We find no merit to this contention. A "compromise" verdict occurs when the jury awards an amount that reflects a compromise between liability and proven damages. *See Schore v. Mueller*, 290 Minn. 186, 190, 186 N.W.2d 699, 702 (1971). No such compromise is even claimed to have occurred here. It is true that, in addition to awarding uncontested amounts, the jury awarded exactly half the damages requested for pain and suffering. An award of half the damages requested does not necessarily constitute compromise, nor does the jury's deliberation time of one and a half hours necessarily indicate it. The jury may not have found the factual questions difficult to answer, and we see no cause to speculate on misconduct.

## V. *Excessive Damages*

PaCal argues the jury's award of damages was excessive. A jury award may be set aside if "manifestly and palpably contrary to the evidence." *Levienn v. Metropolitan Transit Comm'n*, 297 N.W.2d 272, 273 (Minn.1980). The jury's award of $1 million for past and a further $1 million for future pain and suffering was amply supported by the evidence. The treating physician testified that Albert was burned severely over almost 90 percent of his body and was given less than a ten percent chance of survival upon admission to the hospital. Given such injuries, the jury's award for pain and suffering cannot be said to be excessive; in fact, the jury's award of $50,000 for future loss of earnings seems quite modest and indicates that the jury was not reckless in awarding damages. We affirm the damage award.

## VI. *Jury Instructions*

PaCal argues the trial court erred in failing to give various jury instructions. A party is entitled to jury instructions on theories of liability for which there is support in the evidence. *Hammond v. Minneapolis Street Ry. Constr. Co.*, 257 Minn. 330, 332, 101 N.W.2d 441, 443 (1960). The trial court has broad discretion in choosing the form and language of jury instructions, so long as the entire charge fairly and adequately contains the law applicable to the case. *Kronebusch v. MVBA Harvestore Sys.*, 488 N.W.2d 490, 496 (Minn.App.1992), *pet. for rev. denied* (Minn. Oct. 20, 1992).

### A. *Borrowed Tool*

PaCal requested, but was denied, an instruction on a defense to the borrowed-tool theory of liability. The trial court's denial was appropriate. The plaintiff did not assert this theory at trial, and therefore an instruction on a defense to this theory would have been irrelevant and possibly confusing to the jury.

### B. *Primary and Secondary Assumption of Risk*

A judge has broad discretion to grant an instruction on assumption of risk. *Willmar Poultry Co. v. Carus Chemical Co.*, 378 N.W.2d 830, 836 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 19, 1986).

First, we note that PaCal does not appear to have requested an instruction on primary assumption of risk. In any event, we conclude that there is no evidence to support its submission to the jury.

A plaintiff assumes a risk when he has knowledge of the risk, appreciates the risk, and has a chance to avoid it but voluntarily chooses to undertake the risk anyway. *Evanson v. Jerowski*, 308 Minn. 113, 118, 241 N.W.2d 636, 640 (1976). There is no evidence in this record that Albert knew that dangerous, flammable vapors had developed in the tank. Thus, an instruction on primary

assumption of risk would have been inappropriate.

The Minnesota Practice Jury Instruction Guides recommend that no instruction be given on the theory of secondary assumption of risk, because it has been merged into contributory fault. 4 Minnesota Practice, JIG 135 (3rd ed. 1986). *See also Thompson v. Hill,* 366 N.W.2d 628, 632 (Minn.App.1985) (noting merger of assumption of risk into contributory fault). The trial court's instruction on the plaintiff's duty of reasonable care and the jury verdict form necessarily required the jury to consider whether Albert assumed some risk that contributed to his injury.

### C. *Superseding, Intervening Cause*

■ PaCal argues that MAK Oil's and Ceres' failure to have a supervisor present was a superseding cause of Albert's injuries.

"[A] superseding, intervening cause is an act of plaintiff or of a third person, in no way caused by defendant's negligence, or a force of nature, occurring *after* defendant's negligent act or omission and operating as an independent force to produce the injury." *Hafner v. Iverson,* 343 N.W.2d 634, 637 (Minn.1984) (quoting *Medved v. Doolittle,* 220 Minn. 352, 357, 19 N.W.2d 788, 791 (1945)) (emphasis in original).

Albert's injuries resulted from a combination of several parties' negligent acts, none of which has been shown to be a superseding cause. MAK Oil's negligence occurred when their supervisor left the two workmen alone on the site and was prior in time to that of PaCal. Ceres has not been shown to have a duty. Therefore, denial of this instruction was proper.

### D. *Negligent Supervision and Instruction*

■ A general instruction is sufficient unless a more specific instruction is necessary to enable the jury to determine the question intelligently. *Sandhofer v. Abbott–Northwestern Hosp.,* 283 N.W.2d 362, 367 (Minn.1979). Denial of PaCal's requested instruction on an employer's duty to supervise and instruct employees was not error. The

general instruction on an employer's duty to provide a hazard-free workplace was adequate. The jury's allocation of 25 percent liability to MAK Oil reflects that the question of MAK Oil's negligent supervision and instruction was thoroughly considered.

### E. *Employee's Negligence in Following Instructions*

■ The denial of an instruction on the employee's duty to follow the employer's instructions was not error. The general instruction on the plaintiff's duty to exercise reasonable care was sufficient. *See id.* Again, the jury allocated 25 percent fault to Albert. It seems unlikely that an additional instruction on the duty to follow instructions, which Albert denied were given him, would have changed the result.

### F. *OSHA Exhibits*

■ PaCal contends the district court erred in submitting copies of OSHA regulations to the jury without instructing the jury as to the regulations which might be applicable. We agree that the better practice is to instruct the jury with particularity on which regulations the parties claim are applicable, but conclude the failure to do so was not error. The trial court allowed counsel to argue to the jury the OSHA regulations claimed applicable. The trial court's overall charge was sufficient to instruct the jury as to the role of the regulations in this case. Additionally, we note that PaCal failed to object to submission of the OSHA regulations until its motion for new trial. Accordingly, we conclude that the trial court did not err in so submitting the OSHA exhibits.

### G. *Failure to Instruct on OSHA Application to MAK Oil*

■ PaCal argues the trial court erred in failing to state in the jury instructions that OSHA regulations applied to MAK Oil as well as to PaCal. The trial court's omission appears to have been inadvertent. A party must object before the jury retires to inadvertent errors or omissions in the jury instructions. Minn.R.Civ.P. 51. PaCal did not object to this instruction until after the jury retired, and therefore waived the error.

### H. *Instruction on Premises Liability*

PaCal argues that the evidence did not warrant an instruction on premises liability because, in its view, Minnesota law does not impose on a landowner a duty of care to the employee of a subcontractor.

■ Minnesota law specifically provides that the employer of an independent contractor "may * * * owe a duty of care, as a possessor of land, to persons coming on the premises, including the employees of an independent contractor." *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 401 (Minn.1981). Under *Conover*, therefore, PaCal, as a possessor of land, has a duty of due care to employees of an independent contractor who come onto its premises.

■ A possessor of land has a duty to use reasonable care to protect persons coming onto the premises from an unreasonable risk of harm caused by the condition of the premises. *Bisher v. Homart Dev. Co.*, 328 N.W.2d 731, 733 (Minn.1983); 4 Minnesota Practice, JIG 330 (3rd ed. 1986). Ordinarily, this duty requires the landowner to inspect and to warn before turning over the job site to an independent contractor. *Conover*, 313 N.W.2d at 401.

■ Both Albert and Geers testified that they were unaware that dangerous vapors had developed from oil heated to more than 230 degrees and that PaCal did not warn them of this condition. Since there was evidence to support it, an instruction on premises liability was required.

We conclude that there was no reversible error in the trial court's jury instructions on premises liability.

### VII. *Admission of Evidence*

■ PaCal challenges the trial court's rulings on the admissibility of evidence. Rulings on admissibility of evidence are left to the sound discretion of the trial court. *In re Conservatorship of Torres*, 357 N.W.2d 332, 341 (Minn.1984).

### A. *Attempted Impeachment of Albert*

■ The trial court excluded hearsay documents from Albert's personnel file from his previous employment at Duke Power.

PaCal planned to use these documents to challenge Albert's testimony that he left Duke Power voluntarily and that his supervisors there had been satisfied with his performance. The evidence sought to be admitted was hearsay and does not appear to fit under any of the exceptions to the rule against hearsay evidence. *See* Minn.R.Evid. 802 (hearsay evidence is not admissible except as provided for by the rules of evidence or other rules provided by the supreme court or by the legislature). Exclusion of this evidence was within the trial court's discretion.

### B. *Evidence of Ceres' Negligence*

■ PaCal asserts the trial court erred in restricting evidence of Ceres' negligence. Exclusion of such evidence was proper because the trial court dismissed Ceres from the case on the first day of trial, holding that no duty from Ceres to Albert was shown. Evidence of Ceres' purported negligence would therefore have misled the jury.

### C. *Flame–Retardant Clothing*

■ PaCal sought to introduce expert testimony regarding MAK Oil's duty to provide flame-retardant clothing. In the offer of proof, the expert stated he did not know if flame-retardant clothing would have protected Albert. The trial court excluded this evidence because it was irrelevant and lacked foundation. This ruling was not an abuse of discretion.

### VIII. *Judgment Notwithstanding the Verdict*

■ PaCal argues the trial court erred in denying its motion for judgment notwithstanding the verdict. In reviewing a trial court's denial of such a motion, the facts are to be considered in the light most favorable to the verdict. *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn.1988). PaCal asserts the trial court erred in (1) submitting this case to the jury on a theory of premises liability, (2) failing to instruct on MAK Oil's and Ceres' superseding negligence, and (3) failing to instruct on primary assumption of risk. We have addressed these issues individually above and conclude

that the trial court's denial of judgment notwithstanding the verdict was not an abuse of discretion.

### IX. *Trial Judge's Recusal*

 MAK Oil argues that the trial judge's recusal from the case after the post-trial motions admits bias and that he should have recused himself earlier. The supplemented record does not support this contention. The judge recused himself from consideration of costs because of a potential appearance of impropriety. After the post-trial motions, he retained counsel from the firm of Robins, Kaplan, Miller & Ciresi to represent him in an unrelated matter. A member of that firm represented the plaintiff, Todd Albert, in this case. The judge's recusal resulted from a concern for a newly developed potential appearance of impropriety, rather than from bias present throughout the trial. MAK Oil is not entitled to a new trial, because the trial judge's recusal does not reflect on his conduct of the trial.

### X. *Jurisdiction to Allocate Judgment Proceeds*

MAK Oil moved the trial court to amend the findings and allocate the proceeds of the judgment. The trial court denied this motion because, he concluded, the Department of Labor and Industry has sole jurisdiction to make such an allocation.

At the outset, we note that MAK Oil appears to be represented on this issue by two separate and opposing sets of attorneys. For the sake of clarity, we refer to third-party defendant MAK Oil as "MAK Oil" and Intervenor MAK Oil as their workers' compensation carrier ("W/C carrier").

The trial court based his decision on *Staats v. Fabricating Equipment and Sys.*, 359 N.W.2d 345, 349 (Minn.App.1984), *pet. for rev. denied* (Minn. Mar. 13, 1985). In that case, however, the subrogation interest of the employer had not been determined. This court noted in *Staats* that "we leave the precise determination of the insurer's subrogation interests and liability for costs * * * to the Worker's Compensation Division." *Id.* at 348. Here, on the other hand, the parties have stipulated to the subrogation interest,

and therefore the rationale underlying the holding in *Staats* does not apply.

 District courts have broad jurisdiction over all judicial matters. *Henning v. Wineman*, 306 N.W.2d 550, 553 (Minn.1981). The legislature's grant of judicial powers to other courts does not necessarily deprive the district courts of those powers. *Id.* We have found no authority for the proposition that the Labor Department has sole jurisdiction to distribute the proceeds of such judgments. Indeed, at least one case suggests that the trial court has the authority to make such a disposition. In *Kempa v. E.W. Coons Co.*, 370 N.W.2d 414, 419 (Minn.1985), the Minnesota Supreme Court, while noting that ordinarily the Labor Department allocates the proceeds, held that the trial court should allocate the proceeds to dispose of the pending litigation.

The trial court below should have allocated the proceeds; we reverse his conclusion that he lacked authority for such allocation.

### XI. *Subrogation Interest*

 MAK Oil next requests that this court decide whether PaCal's contribution claim should offset the subrogation interest. We decide this issue now, rather than remand, for several reasons. First, the trial judge in this rather complex case has recused himself, and therefore a remand would inconvenience the parties and any substitute judge assigned upon remand. Second, the W/C carrier conceded at oral argument that the figures MAK Oil used in its brief to this court are accurate, and therefore further fact finding seems unnecessary. Finally, the only remaining disputed issues are questions of law, which this court has jurisdiction to decide. Minn.R.Civ.App.P. 103.04. *See Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn.1983) (appellate court conducts independent review of record in light of relevant law to determine if the lower court made the proper legal conclusion).

MAK Oil asserts that its subrogation interest offsets the contribution judgment.

MAK Oil's insurer has paid Albert $546,-598.51 in workers' compensation thus far. In addition to workers' compensation coverage,

MAK Oil also carries a $100,000 liability policy ("Coverage B"). The contribution judgment against MAK Oil is for $654,036.07. The W/C carrier argues that MAK Oil should satisfy the contribution judgment by using its $100,000 liability policy and paying the balance of $554,000 itself. Such a result would, we believe, conflict with the workers' compensation statutory scheme and Minnesota case law.

Originally, an employer, in return for carrying workers' compensation coverage, was insulated from all liability to an injured employee. *See Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 120–21, 257 N.W.2d 679, 684 (1977) (giving overview of worker's compensation system and policy). Under this no-fault system, an employer could not be sued for contribution by a negligent third party. *Id.* at 125–26, 257 N.W.2d at 687. As a result, a negligent third party was forced to bear the burden of the entire judgment regardless of its percentage of fault.

In addition, the employer, no matter how negligent, had a right of subrogation or indemnity against a third party. *See* Minn. Stat. § 176.061, subd. 5 (1990).

In *Lambertson,* negligent third parties were permitted to seek contribution from a negligent employer in the amount of the employer's proportion of negligence, but not to exceed the employer's workers' compensation liability. *Lambertson,* 312 Minn. at 127–30, 257 N.W.2d at 688–89. This compromise allowed the third party some contribution but still protected the employer's interest in not paying more than its workers' compensation liability. *Id.* Subsequently, the legislature amended the workers' compensation statute to permit a reduction in the reimbursement an employer can expect from the proceeds of its employee's action against the negligent third party. *Kordosky v. Conway Fire & Safety, Inc.,* 304 N.W.2d 616, 619–20 (Minn. 1981); *see* Minn.Stat. § 176.061, subd. 6(c) (1990).

*Lambertson* has been followed and interpreted in a series of supreme court cases.

*See Johnson v. Raske Bldg. Sys., Inc.,* 276 N.W.2d 79 (Minn.1979); *Kordosky,* 304 N.W.2d at 619, 621; *Horton by Horton v. Orbeth, Inc.,* 342 N.W.2d 112, 114–15 (Minn. 1984); *Wilken v. International Harvester Co.,* 363 N.W.2d 763–66, 767, 770 (Minn. 1985); *Kempa,* 370 N.W.2d at 420–21.

The W/C carrier argues that this case law does not permit an offset of the contribution claim against the employer's subrogation interest. We conclude, on the contrary, that the case law does precisely that.

In *Wilken,* 363 N.W.2d at 767, the supreme court held that "a negligent employer's contribution obligation is used to offset that employer's right of subrogation for benefits paid." Further, the court explained in *Horton,* 342 N.W.2d at 115, that an employer does not really "contribute" to the third party:

> [W]hile *Lambertson* speaks in terms of contribution, the real impact of the decision was the limitation of a negligent employer's right of subrogation * * * In short, contribution was merely a vehicle for offsetting a negligent employer's right of subrogation.

Finally, *Kempa,*[1] 370 N.W.2d at 419–20, makes clear that the contribution offsets the subrogation interest. The supreme court there noted that the employer's damages are limited by its workers' compensation liability even if the employer's fault-based damages would have been greater. *Id.* at 420–21. *Kempa* is also instructive in showing the interplay between the statutory subrogation formula and the *Lambertson* contribution doctrine.

Counsel for the W/C carrier conceded at oral argument that the amount of subrogation interest is stipulated and that the figures in MAK Oil's brief are accurate. We apply those figures and the statutory formula as explained in *Kempa* as follows:

| | | |
|---|---|---|
| Damages | $1,962,108 | × .3375 = 662,211 |
| Costs | − 662,211 | |
| | $1,299,897 | |
| Employee's ⅓ share | − 433,299 | |
| | $ 866,598 | |

**1.** Although *Kempa* involves a *Naig* settlement, we believe its analysis of the relationship between the statutory subrogation formula and the contribution claim applies to this case.

| Employer reimbursement | − 362,121 | |
| (546,598 × .3375 = 184,477 | | |
| 546,598 − 184,477 = 362,121) | | |
| Balance | 504,477 | × .3375[2] = 170,261 |
| Employer share of costs | − 170,261 | |
| Credit for future benefits | 334,216 | |
| Net reimbursement | + 362,121 | |
| Subrogation interest | $ 696,337 | |

PaCal's obligation to Albert is $1,599,987 ($1,962,108 less net reimbursement of $362,121). MAK Oil has, after subtracting the contribution judgment against it from its subrogation interest, a future credit of $42,301 ($696,337 − $654,036).

### XII. *PaCal's Costs and Disbursements*

 The trial judge did not rule on the issue of who should pay PaCal's costs and disbursements because he recused himself after ruling on the motions for JNOV or a new trial. MAK Oil argues that PaCal is not the prevailing party and therefore is not entitled to costs from MAK Oil. PaCal argues that appeal on this issue is premature as the trial judge did not rule on it.

A prevailing party is entitled to reasonable disbursements. Minn.Stat. 549.04 (1992). The workers' compensation statutory scheme forces the defendants in a multi-party case such as this into an artificial procedural posture where the employer becomes a third-party defendant rather than a co-defendant. Here, PaCal was assessed 50 percent negligence, twice that of MAK Oil, which was assessed 25 percent negligence. MAK Oil is thus the prevailing party and PaCal is not entitled to its costs and disbursements from MAK Oil.

### DECISION

We affirm the district court's grant of summary judgment dismissing Ceres as a third-party defendant. We affirm the trial court's denial of the motions for new trial and JNOV. We reverse the trial court's conclusion that it lacked jurisdiction to allocate the proceeds of the judgment and direct entry of judgment in accordance with this decision. We hold PaCal is not entitled to costs and disbursements.

2. *Kempa* used a different figure, .35. This figure represents attorney fees and costs. *Id.* at 419.

**Affirmed in part, reversed in part, and remanded for entry of judgment.**

In this case we use .3375 because this is the figure used in third-party MAK Oil's brief.