Phyllis WIKERT, Appellant,

v.

NORTHERN SAND AND GRAVEL, INC., Respondent,

June Newhouse, Defendant.

No. C5–86–1111.

Court of Appeals of Minnesota.

March 10, 1987.

Review Denied May 18, 1987.

Daniel E. Warner, Broeker, Mihalchick & Blumer, Bloomington, for appellant.

Romaine R. Powell, Pavell, Lang & Schueppert, Bemidji, for respondent.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

FORSBERG, Judge.

This case was originally brought under theories of strict liability, negligence, and breach of warranty. At the time of trial, appellant settled with defendant Newhouse and released Newhouse by Pierringer release. Respondent moved for summary judgment and sought a motion in limine to preclude appellant from introducing evidence at trial of respondent's post-accident conduct of advising persons concerning the nature of concrete. Appellant brought a motion to strike respondent's motion for summary judgment on the basis of untimely service. The trial court granted respondent's motion in limine and motion for summary judgment dismissing appellant's punitive damage claim. Appellant settled her negligence claim for $20,000 in compensatory damages, expressly reserving the right to appeal dismissal of her punitive damages claim. We affirm.

## FACTS

On October 27, 1982, as a result of kneeling in cement for over 2 hours while assisting a neighbor lay a concrete floor, appellant Phyllis Wikert was chemically burned and permanently scarred by ready-mix concrete supplied by respondent Northern Sand and Gravel, Inc. Appellant, who was inexperienced in working with wet concrete, was not wearing protective clothing at the time, because she was unaware of possible dangers of working with the concrete and had not been informed of any precautionary measures to avoid injury.

Evidence proffered by appellant tended to show that respondent was aware of the dangers associated with working with concrete before 1982.

Both Fischers denied having any knowledge of the potential for injury from cement powder, or the hazards associated with working with cement.

Irvin Christiansen, an employee of respondent, brought the cement to the construction site on the day appellant was injured, and was present for about an hour after delivery. Whether Christiansen had observed appellant working unprotected in the concrete, however, was disputed. Christiansen testified he was not familiar with the hazards of working with wet concrete. He did not warn appellant of the possible danger of her prolonged exposure to the cement, nor of precautions to be taken.

As a result of the injuries she sustained, appellant sued respondent based on theories of strict liability, negligence, and breach of warranty. Appellant also claimed punitive damages.

The case was set for trial on May 6, 1986. Respondent, by motion dated April 28, 1986, moved the court for summary judgment and dismissal of appellant's claims of strict liability, breach of warranty, and punitive damages. Respondent also sought an order in limine precluding appellant from introducing evidence concerning any activities or measures taken by Northern Sand & Gravel, after the date of the accident, to advise persons concerning the nature of concrete. Respondent contended that this evidence was inadmissible because it was evidence of subsequent remedial measures, was not relevant, and its prejudicial effect would outweigh any probative value.

Appellant moved, pursuant to Rule 56 and 6.05, to strike respondent's summary judgment motion on the grounds that it was not timely served, and that there were genuine issues of material fact in dispute. Appellant withdrew her claims alleging strict liability and breach of warranty, and they were dismissed by the court.

After a brief hearing at which appellant was permitted to make an offer of proof, the trial court granted respondent's summary judgment and dismissed appellant's punitive damages claim based on a finding that appellant had failed to sufficiently establish the "willful indifference to the rights and safety of others" necessary to

permit a punitive damages claim. The court also granted respondent's motion in limine and excluded evidence of respondent's subsequent remedial measures.

After the trial court's rulings, appellant and respondent settled the negligence claim. Judgment was entered in favor of respondent dismissing appellant's claims for strict liability, breach of warranty, and punitive damages. Appeal is taken from that judgment.

## ISSUES

1. Did the trial court err in granting respondent's motion in limine and excluding evidence of subsequent remedial measures taken by respondent?

2. Did the trial court err in granting respondent's summary judgment and dismissing appellant's claim for punitive damages?

## ANALYSIS

### I.

Respondent contends this issue is not properly before this court because a motion in limine is not an appealable order. As the judgment in this case is clearly appealable, the order is properly before the court.

At the time of trial, appellant indicated she would introduce evidence that after appellant's accident, respondent began stamping all delivery tickets given to customers with a warning concerning the possibility of injury from working with wet cement. The trial court granted respondent's motion in limine, based on Minn.R. Evid. 407, and excluded all evidence of later actions by respondent after the date of the occurrence involved here, to advise persons concerning the dangers of working with concrete.

Rule 407 states:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Appellant argues that the evidence introduced was not evidence of a subsequent remedial measure. Appellant contends that this evidence was to prove punitive damages based on the attitude and conduct of respondent upon discovery of their misconduct, the feasibility of precautionary measures and for impeachment purposes. Minn.Stat. 549.20, subd. 3 (1984), Minn.R. Evid. 407.

Rulings on the admissibility of evidence are left to the sound discretion of the trial court, and its determination controls "unless practical justice requires otherwise." *Colby v. Gibbons*, 276 N.W.2d 170, 175 (Minn.1979) quoting *Hiedeman v. Hiedeman*, 290 Minn. 210, 217, 187 N.W.2d 119, 124 (1971). Rule 103(a) of the Rules of Evidence states that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *." Minn.R.Evid. 103(a).

 It is clear in this case that exclusion of the evidence did not affect a substantial right of appellant. The purposes for which appellant desired to introduce this evidence: to show feasibility of precautionary measures, and for impeachment, could have been achieved by evidence and testimony concerning *pre*-accident circumstances and knowledge. A showing of attitudes and conduct upon learning of the misconduct was also possible through other means. Since the exclusion of the evidence had little or no effect on the case as a whole, the trial court's ruling did not affect a substantial right of appellant, and the ruling was not error.

### II.

Appellant contends that the trial court erred by granting summary judgment when the respondent failed to follow the notice requirements of Minn.R.Civ.P. 56.03.

Rule 56.03 provides that a summary judgment motion shall be served at least 10 days before the time fixed for the hearing. Rule 6.05 adds 3 days to the prescribed period if the motion is served by mail, as it was in this case. There is no dispute that respondent's motion was not timely served. Appellant received the motion by mail 8 days before the hearing date.

■ Appellant correctly notes that the stated time for the notice in Rule 56.03 is mandatory, absent a clear waiver by the adversary. *McAllister v. Independent School District No. 306*, 276 Minn. 549, 149 N.W.2d 81, 82 (1967).

However, in *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588 (1975), the court approved the trial court's granting summary judgment sua sponte on the day of trial without notice to the parties and affirmed dismissal of defendant's counterclaim. The court recognized the holding in *McAllister* but distinguished the case from *McAllister* because defendants could show no prejudice by reason of the absence of a formal motion. *Id.* at 278–81, 230 N.W.2d at 591–92.

■ The trial court may grant summary judgment at a pre-trial if there are no material facts in dispute, judgment is proper for one party as a matter of law, and there is no prejudice to the objecting party as a result of the lack of notice.

> Unless the objecting party can show prejudice arising from the lack of notice * * *, exercising [summary judgment] power at a pre-trial is sound. Seldom should lack of notice prejudice a party, as each party should be fully prepared on the facts applicable to the case in order to participate in the pre-trial. To compel a 10 day delay solely to comply with the notice requirements of Rule 56.03 would seem ill-advised.

*Niazi v. St. Paul Mercury Ins. Co.*, 265 Minn. 222, 227, 121 N.W.2d 349, 353 (1963). Here, since the summary judgment motion was considered at the pre-trial conference, appellant should have been prepared to argue the motion, despite inadequate 56.03 notice. Even though there was clearly no waiver of the notice, there was no prejudice and appellant was given ample opportunity to argue and attempt to raise genuine issues of fact for the trial court to consider.

■ As the second basis for assigning error to the trial court's grant of summary judgment, appellant argues that there were material issues of fact in dispute, and that appellant was entitled to prevail on her punitive damages claim as a matter of law.

Minn.Stat. § 549.20, subd. 1 states:

> Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1 (1984). To be entitled to a trial on the issue of punitive damages, appellant was required to first establish a genuine issue as to whether respondent's conduct was sufficient to meet this standard. *Anderson v. Amundson*, 354 N.W.2d 895, 898 (Minn.Ct.App. 1984).

■ Punitive damages are an extraordinary remedy, and are awarded only where the harm complained of is the result of conduct done in malicious, willful, or reckless disregard for the rights of others. *Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980). In *Anderson* the court held that the plaintiff had met this burden with evidence that the defendant driver voluntarily drank while knowing that he had to drive home. 354 N.W.2d at 898. The court stated that this constituted the knowing and willful indifference to the rights and safety of others that § 549.20 was designed to penalize. *Id.*

*Gryc v. Dayton Hudson Corp.*, 297 N.W.2d 727 (Minn.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980), was the first time punitive damages were awarded in a strict liability case, when a four-year-old girl was severely injured when her "flannelette" pajamas caught fire over a stove. In that case the plaintiff met its initial burden by introducing evidence

that the fabric used by defendants in making the flannelette pajamas was highly flammable, had been proved to be so before the accident, and that defendant was aware of this but had rejected an available flame resistant treatment for economic reasons. *Id.* at 739–40. The *Gryc* court noted that the remedy was particularly appropriate because the "state punitive damages remedy concerns the vital state interest of protecting persons against personal injury" resulting from "willful, wanton, and reckless" conduct of others. *Id.* at 737.

Here, as is evident from the above statement of facts, the evidence as to the defendant's knowledge of the dangers of working with cement was hotly disputed. Nevertheless, the trial court held that even if all facts were resolved in favor of the appellant, there was insufficient evidence to submit the issue of punitive damages to the jury.

Indeed, from the cases cited above, it appears that something more than mere indifference to the rights and safety of others, such as that which was almost certainly present here, must be present to allow the "extraordinary" remedy of punitive damages. There must be a maliciousness, an intentional or willful failure to inform or act, before imposing this form of deterrence and extreme punishment. What is objectionable here is not the alleged negligence of respondent in failing to inform the public of possible, if only remote, dangers, but rather the attempt to deny that knowledge of the possibility existed. This post-accident behavior, however, is not sufficient conduct to warrant an award of punitive damages.

### DECISION

The trial court's exclusion of evidence of subsequent remedial measures did not affect a substantial right of appellant and was not error.

The trial court properly dismissed appellant's punitive damages claim based on a lack of any showing of egregious conduct warranting such relief.

Affirmed.