**KABANUK DIVERSIFIED INVESTMENTS, INC., d/b/a Tropix Beach Club, Appellant,**

v.

**CREDIT GENERAL INSURANCE COMPANY, Respondent,**

**David Hass, Respondent,**

**Brian Chavez, Defendant.**

No. C0–96–322.

Court of Appeals of Minnesota.

Aug. 27, 1996.

Review Denied Oct. 28, 1996.

Steven L. Theesfeld, Yost & Baill, P.L.L.P., Minneapolis, for Appellant.

James P. Ashley, Johnson & Condon, P.A., Minneapolis, for Respondent Credit General Insurance Company.

Jeffrey M. Ellis, Messerli & Kramer, P.A., Minneapolis, for Respondent David Hass.

Considered and decided by KALITOWSKI, P.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Kabanuk Diversified Investments, Inc., d/b/a Tropix Beach Club, instituted a declaratory judgment action seeking a determination of whether respondent Credit General was required to defend it in a personal injury suit brought by respondent David Hass. Credit General brought a motion for summary judgment, arguing that the assault and battery endorsement contained in its insurance policy with Tropix clearly and unambiguously excluded any coverage for any and all conduct arising out of an assault and battery. The trial court agreed and granted summary judgment in Credit General's favor. We affirm.

## FACTS

On September 27, 1994, respondent David Hass was assaulted by Brian Chavez outside the Tropix Beach night club in downtown Minneapolis. Hass was attacked from behind and suffered extensive injuries to his face, mouth, and eye sockets. Chavez was charged with first-degree assault. He accepted a plea bargain and confessed to the lesser included offense of attempted first-degree assault. David Hass filed a civil complaint against Chavez seeking damages for assault, battery, and intentional infliction of emotional distress. In his suit, Hass also sought damages from Tropix alleging negligent supervision, hiring, training, supervision (separate count), retention, and negligent infliction of emotional distress.

At the time of the assault, respondent Credit General Insurance Company insured Tropix under a general commercial liability insurance policy. The policy included an attachment excluding coverage for bodily injury or property damage arising out of an actual or threatened assault or battery. Pursuant to this endorsement, Credit General refused to defend respondent against Hass' lawsuit. Tropix instituted a declaratory judgment action against Credit General arguing that Credit General had a duty to defend it against Hass' lawsuit. Credit General brought a summary judgment motion contending that the policy's assault and battery endorsement clearly and unambiguously precluded coverage to Tropix for any and all conduct arising out of an assault and battery. In response, Tropix argued that the endorsement was ambiguous and should be construed in favor of coverage. The Hennepin County District Court found the endorsement to be unambiguous and granted respondent's motion for summary judgment. Tropix appeals.

## ISSUE

1. Did the trial court err in considering Tropix' cross-motion for summary judgment?

2. Did the trial court err in concluding that the Credit General assault and battery endorsement was not ambiguous?

3. Did the trial court err in concluding that Credit General was not required to defend Tropix against the claim of negligent infliction of emotional distress?

4. Did the doctrines of reasonable expectations and illusory coverage provide coverage in the present case?

## ANALYSIS

On appeal from summary judgment, the reviewing court is to determine whether any genuine issues of material fact exist and whether the trial court correctly applied the law. *Offerdahl v. University of*

*Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). "Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn. 1992). This court need not defer to the trial court's decision on purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984). Thus, our review is de novo. *National Family Ins. v. Bunton,* 509 N.W.2d 565, 567 (Minn.App.1993) (interpretation of an insurance policy is subject to de novo review).

## I.

■ To begin, Credit General argues that Tropix' cross-motion for summary judgment was untimely pursuant to Rule 115.03(a) of the Minnesota Rules of General Practice and therefore improperly considered by the trial court.

Here, Tropix did not serve Credit General with its cross-motion for summary judgment until nine days before the hearing date scheduled for Credit General's motion for summary judgment. Credit General objected, arguing that the cross-motion for summary judgment was untimely because it was not filed within 28 days of the scheduled hearing date. The trial court rejected Credit General's untimeliness argument and considered the motions on their merits. Ultimately, the trial court ruled in Credit General's favor.

■ Rule 115.03(a) provides that no dispositive motion shall be heard unless the moving party serves the proper notice and documents at least 28 days prior to the scheduled hearing. Rule 56.03 of the Minnesota Rules of Civil Procedure provides that summary judgment motions shall be governed by Rule 115.03, but that "in no event shall the motion be served less than 10 days before the time fixed for hearing." Absent a clear waiver by the adversary, the time period requirements of rule 56.03 are mandatory. *McAllister v. Independent Sch. Dist. No. 306,* 276 Minn. 549, 550, 149 N.W.2d 81, 82 (1967); *Tri–State Ins. Co. v. Bontjes,* 488 N.W.2d 845, 848 (Minn.App.1992).

Minnesota courts have upheld summary judgments when the 10–day requirement of notice pursuant to Minn. R. Civ. P. 56.03 has not been satisfied where summary judgment was granted at a pre-trial hearing or other comparable hearing, full discovery has been conducted or where there are no material facts in dispute, judgment for one party is proper as a matter of law, and there is no prejudice to the objecting party as a result of the lack of notice. *See Anderson v. Lappegaard,* 302 Minn. 266, 275, 224 N.W.2d 504, 510 (1974) (defendant's untimely motion for summary judgment was properly considered by the trial court where plaintiff's motion for summary judgment was properly before the court and judgment as a matter of law was appropriate); *Niazi v. St. Paul Mercury Ins. Co.,* 265 Minn. 222, 227, 121 N.W.2d 349, 353 (1963) (unless prejudice can be shown by the objecting party, the exercise of summary judgment at pre-trial is sound); *Wikert v. Northern Sand & Gravel, Inc.,* 402 N.W.2d 178, 182 (Minn.App.1987) (trial court did not err in considering summary judgment motion filed 8 days before hearing date where no material facts were in dispute, judgment as a matter of law was proper, and there was no prejudice to the objecting party as a result of the lack of notice), *review denied* (Minn. May 18, 1987).

Although Tropix' cross-motion for summary judgment was filed nine days before the scheduled hearing date, Credit General suffered no prejudice. Tropix raised no new arguments in its motion, and there is no indication Credit General was "caught off guard" nor denied a meaningful opportunity to prepare and respond to Tropix' arguments, supporting affidavits, and exhibits. Moreover, the memorandum of law submitted as part of Tropix' moving papers is entitled "Tropix' Memorandum of Law in Response to and Support of Cross–Motion for Summary Judgment" and the arguments are reasonably construed as a response to Credit General's motion for summary judgment. As such, Tropix' response was filed in a timely manner. *See* Minn. R. Gen. Pract. 115.03(b) (party responding to dispositive motion must file memorandum of law and supplemental affidavits and exhibits at least 9 days before scheduled hearing). Therefore, it was not inappropriate for the trial court to consider Tropix' cross-motion for summary judgment

simply as a response to Credit General's motion for summary judgment.

## II.

Tropix contends that Credit General, as its insurer, had a duty to defend it against Hass' lawsuit. Tropix argues that because Credit General breached this duty, it is entitled to recover the costs it incurred in defending against Hass' lawsuit. Credit General, on the other hand, contends that its policy clearly and unambiguously precludes coverage for all claims arising out of an assault and battery.

An insurer is not bound to defend an insured on a claim outside the insured's policy coverage. *Rulli v. State Farm Fire & Cas. Co.*, 479 N.W.2d 87, 88 (Minn.App.1992), *review denied* (Minn. Feb. 19, 1992). Where the claim alleged is based on allegations that, if proved, fall within the terms of coverage provided for in the policy does the insurer have a duty to defend. *Id.; Economy Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824, 826 (Minn.1989). The duty to defend exists where any part of the claim is arguably within the scope of the policy. *Economy Fire*, 445 N.W.2d at 826. The burden of proving the existence of coverage rests with the insured, while the burden of proving an exclusion rests with the insurer. *Boedigheimer v. Taylor*, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970). An insured may recover defense litigation costs, including attorney fees, where the insurer wrongfully declines to defend the insured. *Lanoue v. Fireman's Fund Am. Ins. Companies*, 278 N.W.2d 49, 55 (Minn.1979); *Morrison v. Swenson*, 274 Minn. 127, 137–38, 142 N.W.2d 640, 647 (1966).

Here, Tropix' general commercial liability policy contained the following endorsement:

### EXCLUSION—ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  This insurance does not apply to "bodily injury" or "property damage" arising out of:

(a) the actual or threatened assault or battery or the failure to suppress or prevent such action by the insured or by anyone else for whom the insured is legally responsible, or

(b) the negligent:

   (i) employment;

   (ii) investigation;

   (iii) supervision;

   (iv) training;

   (v) retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

2.  Exclusion 2.a. of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following:

a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

On appeal, it is not claimed that the allegations contained in David Hass' lawsuit do not arise from an assault and battery. Rather, Tropix contends that the assault and battery endorsement is ambiguous because it is structured in such a way that it is open to two different meanings depending on how the words are grouped together.

When reviewing an insurance policy, the court's function is to ascertain and give effect to the parties' intentions. *Fillmore v. Iowa Nat'l Mut. Ins. Co.* 344 N.W.2d 875, 877 (Minn.App.1984). In so doing, the language of the policy must be construed according to the terms the parties have used, with the language used given its ordinary and usual meaning so as to give effect to the intention of the parties as it appears from the contract. *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972). An insurance policy is considered ambiguous if it is reasonably susceptible to more than one interpretation. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). When the language of an exclusionary clause to an insurance policy

is ambiguous, any doubts as to its meaning should be resolved in favor of the insured and against the insurer who drafted the policy. *Caspersen v. Webber*, 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973).

After examining the intent of the parties, the policy as whole, and the language at issue, the trial court concluded that there was no ambiguity and that the endorsement excluded coverage to Tropix. The trial court ruled that the provision is reasonably read to exclude coverage for a claim arising from "the actual or threatened assault and battery," *or* the failure to prevent such action by Tropix or its employees.

Tropix, however, claims that the exclusion's language is ambiguous because it is susceptible to more than one meaning. In support, Tropix introduced an affidavit and report from Dr. Christopher Anson, a professor of English at the University of Minnesota. Dr. Anson concluded that the language of the policy was "syntactically ambiguous" and open to two different interpretations. According to Dr. Anson, the language can be read to: (1) exclude any actual or threatened assault or battery when it is committed by Tropix (Tropix) or is committed by those for whom Tropix is legally responsible, i.e., Tropix employees, as well as the failure of Tropix or its employees to prevent such assault and battery by Tropix or its employees;[1] or (2) that the endorsement excludes coverage for any assault or battery, or the failure of the insured or its employees to prevent such assault and battery regardless of who commits it.[2] The trial court stated that it was not persuaded by Dr. Anson's analysis, noting that "the analysis extends well beyond plain and ordinary meaning."

This court has had two occasions in which to interpret assault and battery exclusions similar to the one at issue here. In both instances, this court affirmed the trial court decision that the exclusions were unambigu-ous and precluded recovery for the insured. *See Roloff v. Taste of Minnesota*, 488 N.W.2d 325 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992); *Ross v. City of Minneapolis*, 408 N.W.2d 910, 914 (Minn.App.1987), *review denied* (Minn. Sept. 23, 1987).

In *Ross*, plaintiff was assaulted and injured as he was leaving a wrestling match. *Ross*, 408 N.W.2d at 912. The match sponsor's general liability insurer refused to defend based on an assault and battery exclusion in its policy providing that:

> Anything contained in this policy to the contrary notwithstanding; it is agreed and understood that this policy shall not cover claims for bodily injury or death caused by or arising directly or indirectly out of or from an assault and battery of any nature whatsoever whether or not committed by or at the direction of the insured.

*Id.* This court rejected Ross's argument that the assault and battery exclusion was ambiguous, holding that:

> [A] contract is not necessarily ambiguous simply because the parties advance differing interpretations of it. Moreover, 'the court has no right to read an ambiguity into plain language of an insurance policy in order to construe it against the one who prepared the contract.' The plain language of the policy here clearly excluded from coverage any claims arising out of an assault or battery.

*Id.* at 914, *citing Estes v. State Farm Fire & Cas. Co.*, 358 N.W.2d 123, 124 (Minn.App. 1984), *modified on other grounds*, 365 N.W.2d 769 (Minn.1985).

Similarly, in *Roloff*, this court interpreted an assault and battery exclusion that stated:

> ASSAULT AND BATTERY EXCLUSION. It is hereby understood and agreed that no coverage shall apply under this policy for any claim, demand or suit

---

1. The interpretation comes from the following word grouping:

   "actual or threatened assault or battery" *or* "the failure to suppress or prevent such action"

   *by*

   "the insured or by anyone else for whom the insured in legally responsible."

2. This interpretation comes from the following word grouping:

   "actual or threatened assault or battery"

   *or*

   "the failure to suppress or prevent such action *by* "the insured or by anyone else for whom the insured is legally responsible."

based on assault and battery, and assault shall not be deemed an accident, whether or not committed by or at the direction of the Insured.

*Roloff,* 488 N.W.2d at 326. This court concluded this language to be unambiguous and noted that "[e]very court that has considered a similar or identical clause agrees." *Id.* (citations omitted).

The problem with appellant relying on Dr. Anson is that under either of Dr. Anson's interpretations, assuming for the sake of argument that he has a grammatical point, coverage can still arise when there is a legal nexus between Tropix and the wrongdoer, in this case Chavez. The policy excludes bodily injury caused by Tropix' employees and anyone else for whom Tropix might be legally responsible. The policy excludes coverage for negligent employment, investigation, supervision, training, and retention. Appellant concedes that this is not the standard dram shop action. Appellant wants to find coverage under a commercial liability policy which by its own terms excludes coverage for intentional assault and battery by persons for whom Tropix is legally liable. Put another way, appellant has to show that Hass was attacked by somebody for whom Tropix was "not legally liable." Then appellant can argue there is coverage. But it then becomes a moot point. If Tropix is not legally liable for the actions of the attacker, it does not matter whether they have insurance coverage or not. Tropix is not in the lawsuit any more than a total stranger.

Here, the terms of the assault and battery exclusion are unambiguous and exclude coverage in the present case. The trial court properly concluded Credit General had no duty to defend Tropix against Hass' lawsuit.

### III.

■ Tropix argues furthers that even if the exclusion here excluded coverage for bodily injury arising out of assault and battery by anyone, Credit General still had a duty to defend for Hass' claim of negligent infliction of emotional distress. Tropix maintains that Hass' negligent infliction of emotional distress claim does not allege injury stemming from an assault, but rather, as

pleaded, Hass claims he suffered emotional distress when he was allegedly placed in a zone of physical danger by Tropix. We find Tropix' argument unpersuasive.

■ Hass' claim for negligent infliction of emotional distress came about **only** because he was assaulted by Chavez. "The term 'arising out of' requires only a causal connection; it does not require proximate cause." *Ross,* 408 N.W.2d at 912 (citations omitted). Had Hass not been assaulted by Chavez, he would have no claim for negligent infliction of emotional distress. Hass' claim for negligent infliction of emotional distress arises out of Chavez's assault. The trial court did not err in concluding Credit General had no duty to defend Tropix on that count.

### IV.

■ Finally, Tropix argues that coverage was provided under the doctrines of reasonable expectations and illusory coverage. We disagree.

■ The doctrine of reasonable expectations places the burden on the insurer to communicate coverage and exclusions of policies accurately and clearly, while requiring the expectations of coverage by the insured to be reasonable under the circumstances. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 278 (Minn.1985). The doctrine is used to provide coverage where, even if unambiguous, the actual language of the policy interpreted as the insurance company intended works to proscribe coverage. *Id.* (citation omitted). In *Ross,* this court refused to apply the doctrine of reasonable expectations to an assault and battery exclusion, noting that since the Supreme Court's decision in *Atwater,* the doctrine of reasonable expectations has been limited to cases involving contracts with hidden exclusions. *Ross,* 408 N.W.2d at 914; *see also Gunderson v. Classified Ins. Corp.,* 397 N.W.2d 922, 925 (Minn.App.1986) (the doctrine of reasonable expectations does not apply where the terms of the policy are clear and unambiguous); *Park v. Government Employees Ins. Co.,* 396 N.W.2d 900, 902–03 (Minn.App.1987) (doctrine of reasonable expectations limited to the facts as set forth in

*Atwater* ), *review denied* (Minn. Feb. 13, 1986); *Merseth v. State Farm Fire & Cas. Co.*, 390 N.W.2d 16, 18 (Minn.App.1986) (doctrine is limited to those instances where major policy provisions are hidden in the policy and operate to defeat the reasonable expectations of the insured), *review denied* (Minn. Aug. 13, 1986).

Tropix concedes that the assault and battery endorsement was attached to the Credit General Liability Coverage Form and that it modified the insurance contained in the general liability policy. In addition, the policy language is unambiguous. The trial court, therefore, did not err in refusing to apply the doctrine of reasonable expectations.

■ Tropix also claims that the doctrine of illusory coverage applies. The doctrine of illusory coverage provides that "liability insurance contracts should, if possible, be construed so as not to be a delusion to the insured." *Jostens v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn.App.1995), *review denied* (Minn. April 27, 1995), quoting *Motor Vehicle Casualty Co. v. Smith*, 247 Minn. 151, 157, 76 N.W.2d 486, 490–91 (1956). This court has held that the doctrine is best applied "where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* at 119. The trial court properly refused to apply the doctrine of illusory coverage. No evidence was presented that any premium was specifically allocated to coverage for non-employee assault or battery claims.

Tropix argues that it thought it had purchased coverage for non-employee assault. Tropix claims that the assault and battery exclusion, as interpreted by the Credit General and the trial court, would effectively swallow up and deny it the coverage it thought it was purchasing. That argument was rejected in *Jostens*. There, the court rejected the insured's argument that it paid $90,000 for a comprehensive liability policy and yet received nothing in return. *Id.* at 118. We noted that the comprehensive policy "afforded excess and umbrella coverage for a wide variety of damages other than those arising from discrimination." *Id.*

As Credit General notes, Tropix was not charged a premium for assault and battery coverage because the policy's intent was to exclude such coverage. Had such coverage been included, Tropix' premiums would have been higher. Tropix cannot say it paid premiums for functionally nonexistent coverage. Tropix paid premiums for the coverage it had. Tropix did not pay any premiums for the type of coverage it needs here and does not have coverage it now wishes it had. The trial court did not err in refusing to apply the doctrine of illusory coverage to benefit Tropix.

## DECISION

Credit General did not have a duty to defend Tropix against Hass' lawsuit. The terms of the assault and battery endorsement excluding such coverage are clear and unambiguous. Similarly, Credit General did not have a duty to defend Tropix against Hass' claim for negligent infliction of emotional distress. The emotional distress arose out of the assault by Chavez.

Tropix was asked only to pay premiums for the coverage it had. It was not charged a premium for coverage that would have, on this set of facts, insured them. Credit General's intention was not to sell that coverage to Tropix. It did not. Tropix did not pay for it. The doctrines of reasonable expectations and illusory coverage do not apply.

*Affirmed.*

PARKER, Judge (dissenting).

I respectfully dissent and would reverse. Grammatically, as Professor Anson's report demonstrates, the exclusion is susceptible of two meanings and is, thus, ambiguous. The trial court's conclusion, in granting summary judgment, that this analysis "extends well beyond plain and ordinary meaning" confers a surprising status on syntactically ungrammatical usage. If correct, it is a devastating indictment of our customary use of the language.

The insured successfully brought summary judgment against plaintiff on the ground that it owed no duty to him, his assailant not having been an employee of the bar. The

order appealed from concerns only the duty to defend, i.e., the cost of the successful summary judgment motion on liability.

Since the duty to defend is broader than the duty to indemnify, and since the burden of proving an exclusion is on the insurer, and since there was no evidence to oppose the insured's expert opinion evidence, I would reverse the summary judgment order as improvidently granted.