# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2463

_____

| | | |
|---|---|---|
| Mikki M. Murray; Christopher J. Dennis, | * | |
| | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| Greenwich Insurance Company, | * | |
| a Delaware corporation, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: March 10, 2008
Filed: July 7, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Mikki M. Murray and Christopher J. Dennis allege Greenwich Insurance Company improperly refused to defend them under an insurance policy covering professional real estate services. The district court concluded Greenwich had a duty to defend and granted summary judgment in favor of Murray and Dennis. Greenwich appeals and we reverse.

I

Murray and Dennis were real estate agents employed by IPM Realty, Inc. IPM is a Minnesota realty firm and was insured under a real estate professionals errors and omissions policy issued by Greenwich. In June 2006, Murray and Dennis were sued by two former clients who alleged Murray and Dennis solicited them for a real estate venture in Florida and wrongfully withheld $175,000 in deposits made in connection with the venture. The clients allege they responded to IPM advertisements soliciting investors to buy real estate in Florida. They further allege they met with, among others, Murray and Dennis and, after receiving repeated misrepresentations about the profitability of the real estate scheme, entered into two Condominium Escrow Reservation Agreements. Under the agreements, the clients deposited a total of $175,000 with IPM, to be held in trust until they decided to purchase property in a Florida real estate development. The clients contend they were repeatedly assured the deposits were fully refundable upon demand.

Several months after depositing the money with IPM, the clients decided to withdraw from the agreements and demanded the return of the funds. Over the next several months, the clients made repeated demands for IPM to return the funds and were assured the money would be returned. After numerous unsuccessful attempts to retrieve their deposits, the clients filed suit alleging 1) breach of implied duty of good faith and fair dealing, 2) consumer fraud, 3) rescission based on fraud in the inducement/intentional misrepresentation, 4) negligent misrepresentation, 5) deceptive trade practices, 6) breach of fiduciary duty, 7) promissory estoppel, and 8) false advertising.

Murray and Dennis tendered defense of the lawsuit to Greenwich. After reviewing the complaint, Greenwich refused to defend claiming coverage was excluded under Exclusions D(1) and D(3). Exclusion D excludes coverage for claims:

D.	based on or arising out of:

1.	the conversion, commingling, defalcation, misappropriation or improper use of funds or other property; [or]

. . .

3.	the inability or failure to pay, collect or safeguard funds held for others.

Greenwich also denied coverage claiming the policy only provided coverage for acts taken in Murray's and Dennis's capacities as real estate agents, not as promoters of a Florida real estate investment scheme.

Murray and Dennis filed this declaratory judgment action asking the court to determine the rights and obligations of the parties under the insurance contract. The parties filed cross-motions for summary judgment and the district court determined the claim for negligent misrepresentation fell within the terms of the policy's coverage, thereby triggering Greenwich's duty to defend. According to the district court, the negligent misrepresentation claim alleged wrongful conduct separate and distinct from the failure to return or safeguard the deposits, and therefore, Exclusion D did not obviate coverage. The court further concluded Murray and Dennis were acting within their capacities as real estate agents when they solicited the clients' investments.

Greenwich appeals the grant of summary judgment arguing coverage is excluded under Exclusion D because, irrespective of how the funds were obtained, all of the claims asserted are "based on or aris[e] out of" the improper use of funds or the inability or failure to pay safeguarded funds held for others. Greenwich further argues there is no coverage because Murray and Dennis were not acting as real estate agents when they solicited the clients.

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997). However, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997). This is a diversity action and is governed by state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).[1]

Absent statutory laws to the contrary, an insurance contract is subject to general principles of contract law. Waseca Mut. Ins. Co. v. Noska, 331 N.W.2d 917, 926 (Minn. 1983). Coverage issues and the construction and interpretation of a policy are questions of law. Jenoff, Inc. v. N.H. Ins. Co., 558 N.W.2d 260, 262 (Minn. 1997). If there is no dispute of material fact, we independently review the district court's interpretation of the insurance contract. Nat'l City Bank v. St. Paul Fire & Marine Ins. Co., 447 N.W.2d 171, 175 (Minn. 1989). When examining an insurance policy, a court's function is to "determine what the agreement was and enforce it." Fillmore v. Iowa Nat'l Mut. Ins. Co., 344 N.W.2d 875, 877 (Minn. Ct. App. 1984).

"An insurer's duty to defend an insured is contractual." Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415 (Minn. 1997) (citation omitted). The duty to defend is different from and broader than an insurer's duty to indemnify. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 316 (Minn. 1995). "If any claim is arguably

---

[1]The parties agree Minnesota law controls this dispute.

covered under a policy, the insurer must defend and reserve any arguments regarding coverage." Id. (citation omitted). A court must compare the allegations in the complaint of the underlying cause of action with the terms of the insurance policy to determine the existence of a duty to defend. Meadowbrook, 559 N.W.2d at 415.

Whether an insurer has a duty to defend is a question of law. Auto-Owners Ins. Co. v. Todd, 547 N.W.2d 696, 698 (Minn. 1996). An insurer has a duty to defend claims "arguably" covered by a policy. Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165 (Minn. 1986) (quotation omitted). The insurer claiming it has no duty to defend has the burden of showing each claim asserted in the lawsuit clearly falls outside the policy. Id. at 165-66. If the complaint alleges several causes of action, and one of the claims, if established, would require the insurer to indemnify, the insurer must provide a defense against all claims. Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49, 53 (Minn. 1979), overruled on other grounds by Am. Standard Ins. Co. v. Le, 551 N.W.2d 923, 927 (Minn. 1996). Doubts as to coverage must be resolved against the insurer issuing the policy in favor of coverage, and the burden rests with the insurer to prove the claim is not covered. Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 390 (Minn. 1979).

The obligation to defend is generally determined by comparing the allegations in the complaint to the coverage afforded by the policy. Meadowbrook, 559 N.W.2d at 415. Once the insured presents facts that arguably demonstrate coverage or the insurer becomes aware of such facts, the insurer has the "heavy burden" of proving no duty to defend exists. In re Liquidation of Excalibur Ins. Co., 519 N.W.2d 494, 497 (Minn. Ct. App. 1994) (citation omitted).

In the district court, Greenwich argued Exclusion D applied because all of the claims alleged against Murray and Dennis were based on or arose from their failure to return the clients' deposit. According to Greenwich, irrespective of how the various claims were characterized, each was contingent upon the failure of Murray and Dennis

to return the deposited funds.  The district court determined all of the claims, with the exception of the negligent misrepresentation claim, were based on or arose out of the improper use or failure to safeguard the deposits.  It concluded the negligent misrepresentation claim alleged conduct separate from the improper use or failure to safeguard funds, i.e., the clients were wrongfully induced to deposit funds which were then mishandled.  Thus, according to the district court, the negligent misrepresentation claim was based on and arose out of conduct separate from the conduct anticipated by Exclusion D.  We disagree.

The phrase "arising out of" has been given broad meaning by Minnesota courts.  In Faber v. Roelofs, 250 N.W.2d 817 (Minn. 1977), a school bus owned by Roelofs and hired by the school district struck a student.  Id. at 819.  The school district was listed as an additional insured under Roelofs's auto-liability policy.  Id. at 819.  The pertinent language of the insurance contract stated the policy covered damages "arising out of the ownership, maintenance or use of the [school bus]."  Id. at 822.  In the underlying negligence action, the driver and Roelofs were both absolved of negligence, but the school district was found negligent based on its established bus routes and bus-loading procedures.  Id.  The insurer argued that since neither the driver nor Roelofs were negligent, and since the school district was found independently negligent, the student's injuries did not "arise out of the use" of the school bus.  Id.  The Minnesota Supreme Court disagreed, holding a "'[b]ut for' causation, i.e., a cause and result relationship, is enough to satisfy the provision of the policy."  Id. (quotation omitted).  The court construed the phrase "arising out of" as "comprehensive and broad in service," extending to a causal connection with the use or maintenance of the insured vehicle.  Id. (quotation omitted).  Consequently, even though the complaint alleged acts of negligence against the school district which were independent from the use of the bus, the school was covered because the claim arose out of the use of the bus.  Id. at 823.

In <u>Hormel Foods Corporation v. Northbrook Property & Casualty Insurance Company</u>, 938 F. Supp. 555, 556 (D. Minn. 1996), <u>aff'd</u>, 131 F.3d 143 (8th Cir. 1997), Hormel leased a hog-processing facility to Quality Pork Products (QPP). The lease required QPP to include Hormel as an additional insured on QPP's liability policy with Northbrook. <u>Id.</u> QPP's liability policy covered losses "'arising out of the ownership, maintenance or use' of the leased premises." <u>Id.</u> A QPP employee was fatally injured by a machine on the leased premises and a wrongful-death action was brought against Hormel alleging the machine was negligently designed. <u>Id.</u> Northbrook argued the underlying suit did not arise out of Hormel's ownership, maintenance, or use of the premises, and the additional-insured provision only protected Hormel from the negligence of QPP, an issue not contemplated in the products liability action. <u>Id.</u> The court, however, held Northbrook's policy covered Hormel's liability for negligent design. <u>Id.</u> at 558.

> This standard is not one of proximate causation. Rather, "but for" causation satisfies the requirements of an insurance policy which specifies that only liabilities "arising out of the use" are covered. Therefore, if there is a causal relationship between the place covered by insurance and the acts giving rise to legal liability, the liability is covered also.

<u>Id.</u> at 557 (citations omitted).

The phrase "arising out of" has also been held to mean originating from, or having its origin in, growing out of, or flowing from, <u>see, e.g.</u>, <u>Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.</u>, 229 N.W.2d 516, 518 (Minn. 1975) (citation omitted) (dicta), and has been accorded an equally broad reading when used in an exclusion to limit coverage.

In <u>Kabanuk Diversified Investments Incorporated v. Credit General Insurance Company</u>, 553 N.W.2d 65 (Minn. Ct. App. 1996), an insured argued its insurance

carrier had a duty to defend against a personal injury suit brought by a patron who had been assaulted at its nightclub. Id. at 68. The carrier argued the policy excluded any coverage for injuries arising out of an assault and battery. Id. The court of appeals held the policy's assault and battery exclusion unambiguously excluded coverage for the injuries. Id. at 72. Nonetheless, the insured argued the insurer had a duty to defend because one of the claims alleged the insured had been negligent in connection with the assault. Id. The court rejected the argument, noting: "The term 'arising out of' requires only a causal connection; it does not require proximate cause. Had [plaintiff] not been assaulted by [the tortfeasor], he would have no claim for negligent infliction of emotional distress. [Plaintiff's] claim for negligent infliction of emotional distress arises out of [the tortfeasor's] assault." Id. (internal quotations and citation omitted).

Each of the claims asserted within the underlying complaint, either directly or by incorporation, allege an injury originating from, or having its origin in, growing out of, or flowing from the failure to return the deposited funds. See Associated Indep. Dealers, Inc., 229 N.W.2d at 518. "But for" the failure to refund those deposits as promised, there would have been no claims. In other words, had the funds not been mishandled the claims alleged in the complaint would not have arisen. Thus, each of the claims is causally connected to and arose out of the failure to return the entrusted deposits. Accordingly, we conclude the exclusion applies and Greenwich has no duty to defend.

III

The judgment of the district court is reversed and we remand for further proceedings consistent with this opinion.[2]

_____

---

[2]Because Exclusion D applies to defeat the duty to defend claim, Greenwich's remaining issues need not be addressed.