# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3640

_____

| | |
|---|---|
| Eyeblaster, Inc., | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Federal Insurance Company, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: June 10, 2009
Filed: July 23, 2010

_____

Before COLLOTON, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Eyeblaster, Inc. ("Eyeblaster") appeals from an adverse entry of summary judgment in its action against Federal Insurance Company ("Federal") arising out of Federal's denial of coverage under two insurance policies. A computer user sued Eyeblaster, alleging that Eyeblaster injured his computer, software, and data after he visited an Eyeblaster website. Eyeblaster tendered the defense of the lawsuit to Federal, seeking coverage under a General Liability policy and an Information and Network Technology Errors or Omissions Liability policy. Federal denied that it had a duty to defend Eyeblaster, and Eyeblaster brought this action seeking a declaration that Federal owed such a duty. The district court entered summary judgment in favor of Federal, and Eyeblaster appeals. We reverse.

Eyeblaster is a worldwide online marketing campaign management company that advertisers, advertising agencies, and publishers use to run campaigns across the Internet and other digital channels. Its primary product assists in the creation, delivery, and management of on-line interactive advertising. The company was established in 1999 and has fourteen offices worldwide, with six employees located in North America. In 2007, Eyeblaster delivered online marketing campaigns for nearly 7000 brand advertisers and served ads across more than 2700 global web publishers.

The industry in which Eyeblaster provides services is known as rich media advertising. Rich media allows customers to create interactive ads in a wide range of formats, and to track and manage the performance of the advertising campaigns. Eyeblaster has the capacity to deliver ads simultaneously to billions of users globally and to constantly monitor its systems with network and system technicians and engineers. Its service uses cookies, which are typically used in the advertising industry to measure and enhance the effectiveness of an advertising campaign. It also uses JavaScript and Flash technology, which enliven web pages and increase the Internet's utility. Eyeblaster does not use spyware or introduce malicious contact such as spam, viruses, or malware.

Eyeblaster purchased General Liability and Information and Network Technology Errors or Omissions insurance policies from Federal for the period from December 5, 2005 to December 5, 2007. Subject to the policies' terms, Federal had a duty to defend Eyeblaster against lawsuits, even if such suits were false, fraudulent, or groundless.

David Sefton filed a lawsuit against Eyeblaster in Harris County, Texas in October 2006. Eyeblaster removed the action to federal court, where Sefton filed his First Amended Complaint the following month. Eyeblaster provided notice of and tendered defense of the First Amended Complaint to Federal in December 2006. On

March 12, 2007, Federal sent Eyeblaster a letter denying all coverage. When Sefton amended his complaint a second time, Eyeblaster once again tendered defense of the suit to Federal, and again Federal denied coverage. Federal's position was that it owed no coverage under the General Liability policy because Sefton did not assert claims for bodily injury caused by an occurrence, as defined by the policy. In addition, to the extent that Sefton alleged property damage, he did not allege that the property damage was caused by an accident or occurrence as the policy required. Federal also noted three exclusions but offered no explanation as to why they would apply.

With respect to the Information and Network Technology Errors or Omissions coverage, Federal acknowledged that Sefton had complied with the requirement of claiming financial injury during the policy period. However, Federal claimed that Sefton had not alleged that Eyeblaster committed a wrongful act (as defined by the policy) in connection with a product failure or in performing or failing to perform its service. Federal also pointed to general exclusionary language in the policy and to three specific exclusions.

In his Second Amended Complaint, Sefton alleges that his computer was infected with a spyware program from Eyeblaster on July 14, 2006, which caused his computer to immediately freeze up. He further alleges that he lost all data on a tax return on which he was working and that he incurred many thousands of dollars of loss. Sefton hired a computer technician to repair the damage. Although he alleges that no repair was possible, he stated that his computer became operational again. Sefton asserted that he has experienced the following: numerous pop-up ads; a hijacked browser that communicates with websites other than those directed by the operator; random error messages; slowed computer performance that sometimes results in crashes; and ads oriented toward his past web viewing habits.

Sefton alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, and the Texas Business and Commercial Code §§ 48.052 and 48.101, a deceptive trade practice under Texas law, prima facie tort under Texas law, trespass, conversion, fraud, nuisance, invasion of privacy, intrusion upon seclusion, and conspiracy. In stating these alleged violations, Sefton accused Eyeblaster of intentionally accessing a protected computer without authorization, knowingly committing deceptive trade practice violations, intending to deceive Sefton, and intentionally installing unwanted spyware onto a user's computer.[1]

Eyeblaster asserts that Federal knew of its business because Eyeblaster completed an application to obtain professional liability insurance. Eyeblaster disclosed to Federal that its core business activity is the technology used for interactive advertising content delivery and management, and any allegation that Eyeblaster intentionally served an ad would have been in the ordinary course of its business. Eyeblaster points out that it reasonably expected to be covered by Federal's policies at issue, and to suggest otherwise would reduce Federal's coverage to the point where it had no commercial justification.

The parties brought cross-motions for summary judgment. The district court granted Federal's motion and denied Eyeblaster's, thus concluding the case in Federal's favor. The district court determined that Federal owed no duty to defend under either policy and, having made that decision, did not reach any of the exclusions.

Eyeblaster asserts on appeal that the district court erred in failing to address coverage under the General Liability policy for "loss of use of tangible property that is not physically injured," and in failing to recognize that the Sefton complaint alleged

---

[1]Sefton dismissed his action against Eyeblaster in December 2007 pursuant to a confidential settlement.

"physical injury to tangible property." Eyeblaster also asserts that the district court erred in determining that the Sefton complaint did not accuse Eyeblaster of committing a "wrongful act" and that Federal therefore owed no duty to defend under the Errors or Omissions policy.

## I.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Eyeblaster, the non-movant. See Northland Cas. Co. v. Meeks, 540 F.3d 869, 872 (8th Cir. 2008). We apply the same de novo review to the district court's interpretation of the insurance contracts at issue, id., which is an issue of state law, Meister v. W. Nat'l Mut. Ins. Co., 479 N.W.2d 372, 376 (Minn. 1992). There is no dispute that the Federal policies are controlled by Minnesota law.

Under Minnesota law, an insurer's duty to defend is distinct from and broader than its duty to indemnify the insured. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 316 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910 (Minn. 2009). The burden is on the insurer to prove that it has no duty to defend, SCSC Corp., 536 N.W.2d at 316, and in so doing the insurer must show that "each claim asserted in the lawsuit clearly falls outside the policy." Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008) (applying Minnesota law). Although the duty is generally determined by comparing the allegations in the underlying complaint to the policy, if the insured presents facts that arguably demonstrate coverage or if the insurer becomes aware of such facts, the insurer then bears a "heavy burden" of proving that it has no such duty. Id. at 648-49.

## II.

The General Liability policy Eyeblaster purchased from Federal obligates the insurer to provide coverage for property damage caused by a covered occurrence.

Property damage means "physical injury to tangible property, including resulting loss of use of that property . . . ; or loss of use of tangible property that is not physically injured." The definition of "tangible property" excludes "any software, data or other information that is in electronic form."

The district court concluded that the Sefton complaint does not allege damage to tangible property because it only claims damage to software, which is by definition excluded. The district court relied on America Online, Incorporated v. St. Paul Mercury Insurance Company, 347 F.3d 89 (4th Cir. 2003), in which America Online, Inc. ("AOL") attempted to require its insurer to defend against claims that AOL's proprietary software package had "altered the customers' existing software, disrupted their network connections, caused them loss of stored data, and caused their operating systems to crash." 347 F.3d at 93. The Fourth Circuit rejected AOL's argument because its insurance policy covered liability for "physical damage to tangible property," and the court identified the configuration instructions, data, and information as intangible and abstract. Id. at 96. Eyeblaster attempts to distinguish this portion of the AOL case without success. The Sefton complaint alleges direct injury to the operation of his computer, but it alleges no damage to the hardware itself. The complaint would have had to make a claim for physical injury to the hardware in order for Eyeblaster to have coverage for "physical injury to tangible property."

Eyeblaster argues that the district court erred in failing to consider Federal's duty under the second part of the definition of "property damage," which obligates the company to provide coverage if Eyeblaster is alleged to have caused the "loss of use of tangible property that is not physically injured." The tangible property is Sefton's computer, and Eyeblaster points to language from the Sefton complaint in which he alleges his computer was "taken over and could not operate," "froze up," and would "stop running or operate so slowly that it will in essence become inoperable." Sefton also alleges that he experienced "a hijacked browser - a browser program that communicates with websites other than those directed by the operator," and "slowed

computer performance, sometimes resulting in crashes." Sefton asserts that his computer has three years of client tax returns that he cannot transfer because he believes the spyware files would also be transferred, and he therefore must reconstruct those records on a new computer. He thus argues that his computer is no longer usable, as he claims among his losses "the cost of his existing computer."

Federal did not include a definition of "tangible property" in its General Liability policy, except to exclude "software, data or other information that is in electronic form." The plain meaning of tangible property includes computers, and the Sefton complaint alleges repeatedly the "loss of use" of his computer. We conclude that the allegations are within the scope of the General Liability policy. See Am. Online, Inc. v. St. Paul Mercury Ins. Co., 207 F. Supp. 2d 459, 470 (E.D. Va. 2002) (district court found loss of use of tangible property when complaint alleged that AOL caused loss of use of computers and computer functionality, but concluded no coverage existed because allegations were otherwise excluded), aff'd, 347 F.3d 89 (4th Cir. 2003); State Auto Prop. & Cas. Ins. Co. v. Midwest Computers & More, 147 F. Supp. 2d 1113, 1116 (W.D. Okla. 2001) (in case with "property damage" language identical to language of Eyeblaster policy, court holds that "[b]ecause a computer clearly is tangible property, an alleged loss of use of computers constitutes 'property damage' within the meaning of plaintiff's policy").

Federal argues that, even if it owes a duty to defend because Sefton alleged a loss of use of tangible property, that coverage is barred by the exclusion for Impaired Property/Property Not Physically Injured. Under Minnesota law, an insured is entitled to have its case considered by the fact-finder once it has established a prima facie case. The insurer then has the burden to prove that an exclusion applies. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 313 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910 (Minn. 2009). Exclusions are narrowly interpreted against the insurer. SCSC Corp., 536 N.W. 2d at 314.

Federal points to an exclusion in the General Liability policy entitled "Damage to Impaired Property or Property Not Physically Injured," which states that the insurance does not apply to property damage to impaired property or property that has not been physically injured if the damage arises out of any defect, deficiency, inadequacy, or dangerous condition in Eyeblaster's product or work. "This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to your product or your work after it has been put to its intended use." The policy also defines "impaired property:"

> Impaired property means tangible property, other than your product or your work, that cannot be used or is less useful because:
>
> • it incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> • you have failed to fulfill the terms or conditions of a contract or agreement;
>
> if such property can be restored to use by:
>
> • the repair, replacement, adjustment or removal of your product or your work; or
>
> • your fulfilling the terms or conditions of the contract or agreement.

Federal asserts that, if Sefton lost the use of his hardware, it would be "impaired property." It also asserts that Sefton's computer would be "property not physically injured" because it was damaged by the allegedly defective and dangerous condition in Eyeblaster's software.

We conclude that Federal has not met its burden of proving that the exclusion applies. Sefton's computer cannot be considered "impaired property" because no

evidence exists that the computer can be restored to use by removing Eyeblaster's product or work from it. The record shows that Eyeblaster provides advertising services to its clients to enable those clients to reach and interact with online computer users such as Sefton. It is not clear that an Eyeblaster product or Eyeblaster's work ever existed on Sefton's computer, and thus it is equally unclear that such product or work could be removed from the computer. Sefton alleges that the website that he believes caused the damage to his computer "was owned and operated by Eyeblaster or person's [sic] or entities that are controlled directly or indirectly by Eyeblaster." Such a broad characterization does not suffice to satisfy the requirement that Eyeblaster incorporated its product or work into Sefton's computer.

Even if the Sefton complaint could be read to meet the first part of the definition of "impaired property," Sefton alleges that he unsuccessfully attempted to have the damage to his computer repaired. Federal thus cannot demonstrate that Sefton's computer could be restored by the removal of Eyeblaster's product or work. See Corn Plus Coop. v. Cont'l Cas. Co., 444 F. Supp. 2d 981, 990 (D. Minn. 2006) (applying Minnesota law to identical exclusionary language, court holds that repair and replacement of defective welds in piping system cannot restore damaged product running through the system and thus does not fall within definition of "impaired property," citing cases from other jurisdictions).

Federal suggests that two more exclusions to its General Liability policy apply. The first is the "Expected Or Intended Injury" exclusion, which precludes coverage for property damage arising out of an act that is intended by the insured or that would be expected from the standpoint of a reasonable person in the circumstances of the insured to cause property damage. The second is the "Intellectual Property Laws Or Rights" exclusion, which excludes damages related to infringement or violation of any intellectual property law or right. Federal advances no convincing argument in favor of either, and we conclude that these exclusions likewise do not apply.

III.

Eyeblaster next asserts that the district court erred by concluding that the Sefton complaint does not allege a cause of action covered by Federal's Information and Network Technology Errors or Omissions policy. The policy obligates Federal to pay loss for financial injury caused by a wrongful act that results in the failure of Eyeblaster's product to perform its intended function or to serve its intended purpose. "Financial injury" is defined as economic injury resulting from property that cannot be used or is less useful. As the name of the policy suggests, the Errors or Omissions policy specifically covers intangible property such as software, data, and other electronic information. Under the policy, a "wrongful act" is an error, an unintentional omission, or a negligent act.

Federal concedes that Sefton's complaint does allege a "financial injury," which the district court acknowledged. However, the district court determined that the Sefton complaint does not claim a "wrongful act" because the complaint alleges that Eyeblaster acted intentionally in placing its software on Sefton's computer. The district court rejected Eyeblaster's argument that the policy covers allegedly intended acts resulting in unintended injuries, and concluded that the "substance of the allegations" is that Eyeblaster intended to place its product on Sefton's computer.

Recognizing that Minnesota law places the burden on the insurer to prove that it has no duty to defend, and in so doing it must show that "each claim asserted in the lawsuit clearly falls outside the policy," Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008), we conclude that Federal owes a duty under its Errors or Omissions policy.

The Sefton complaint is lengthy and contains many, many allegations. Both parties can selectively cite words and phrases to support their arguments. However, under the appropriate standard of review, Federal cannot demonstrate that each claim

in the Sefton complaint falls outside the coverage of its Errors or Omissions policy. This court has defined "error" in a technology errors and omissions policy to include intentional, non-negligent acts but to exclude intentionally wrongful conduct. St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., 539 F.3d 809, 815 (8th Cir. 2008). Sefton alleges that Eyeblaster installed tracking cookies, Flash technology, and JavaScript on his computer, all of which are intentional acts. However, Federal can point to no evidence that doing so is intentionally wrongful. As Eyeblaster points out in an affidavit filed with the district court, Federal's parent company utilizes JavaScript, Flash technology, and cookies on its own website. Federal cannot label such conduct as intentionally wrongful merely because it is included in the Sefton complaint; Federal has a duty to show that the use of such technology is outside its policy's coverage. Federal points to no evidence that the allegations concerning tracking cookies, etc. spoke of intentional acts that were either negligent or wrongful. Under St. Paul, therefore, the Sefton complaint does allege a wrongful act.

The record also contains the Consent Judgment and Permanent Injunction entered by the United States District Judge in the Sefton action, which includes the following stipulation:

> Sefton acknowledges that after a review of the evidence supplied in discovery, he had no basis in fact to allege that [Eyeblaster] had acted willfully, intentionally, or otherwise with malice aforethought, to injure him or his business or to violate any laws and accordingly he is now willing to submit himself . . . to the within permanent injunction against pursuing claims like those asserted in this case against [Eyeblaster].

While the Consent Judgment and Permanent Injunction obviously did not exist until the Sefton lawsuit was concluded, the quoted language serves to confirm that Eyeblaster's use of technology was subject to coverage under Federal's Errors or Omissions policy. Under Minnesota law, if the insured presents facts that arguably demonstrate coverage or if the insurer becomes aware of such facts, the insurer then

-11-

bears a "heavy burden" of proving that it has no duty to defend. Murray, 533 F.2d at 648-49 (internal quotation marks omitted). Federal did not meet that burden.

Just as with the General Liability policy, Federal argues that several exclusions would apply if we were to conclude that coverage exists under the Errors or Omissions policy. Those exclusions speak of intentional conduct that Federal has not carried its burden to show.

IV.

For the foregoing reasons, we reverse the district court judgment and remand for further proceedings.

COLLOTON, Circuit Judge, concurring in the judgment.

I agree, substantially for the reasons stated by the court, that Federal Insurance Company has not established that all parts of David Sefton's claims against Eyeblaster, Inc., fall clearly outside the scope of coverage provisions under the General Liability and Errors or Omissions policies that Eyeblaster purchased from Federal, although I would not rely on the consent judgment cited by the court, *ante*, at 12, because it did not exist at the time of Federal's disputed denial. I do not join the court's conclusion about exclusions under the General Liability policy. While I agree that Sefton's computer is not "impaired property" for purposes of the first exclusion, the computer is "property that has not been physically injured" – indeed, the court concludes elsewhere that the computer is "tangible property that is not physically injured." *Ante*, at 6-7. And it is likely that Sefton's complaint should be read to allege that the damage to his computer arose out of a dangerous condition in Eyeblaster's product or work, thus satisfying the second criterion for the exclusion. I do agree, however, that there is no applicable exclusion that bars coverage under the Errors or Omissions policy. Because an insurer's duty to defend arises when *any part* of the

-12-

claim against the insured is arguably within the scope of coverage afforded by the policy, *Metro. Prop. & Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 299 (Minn. 1999), I agree that Federal had a duty to defend. Therefore, I concur in the judgment.

_____